### N. ROGERS and others *vs.* KNEELAND.

Where a *factor* was sued for the breach of warranty as to the quality of cotton sold by him, and his principals, after issue joined in such suit, on his refusal to pay over to them a balance of the proceeds of such sale until indemnified against the damages and costs to which he might be subjected in consequence of such suit, addressed a note in writing to third persons, in which, after stating the existence of the suit, that the sale relative to which it was brought was made on their account, that they were of course liable for any damages that might be recovered, and were desirous of providing a full indemnity to their factor, they authorized and requested the persons to whom the note was addressed to pay to their factor all such sums of money as he might be required to pay, as well for any damages that should happen to be recovered against him in the suit, or otherwise in relation to the sale of the cotton, as also all costs and charges to which he might necessarily be put in that behalf, the advances to be made from time to time as occasion might require, or otherwise at the election of the factor, charging such advances to the account of the principals; and the persons to whom the note was addressed, endorsed thereon and signed an engagement in this form: " We will promptly comply with the request of Messrs. L. M. & Sons as contained in the within order," which was delivered to and accepted by the factor, and upon the receipt of which he paid over the balance due to his principals; *it was held*, that the promise of such third persons was valid within the *statute of frauds;* that the implied agreement on the part of the factor *to continue the defence of the suit*, and make the necessary advances in the progress of the same, was a *good and sufficient* consideration *to render* the promise of such third persons binding; and that the consideration being necessarily to be implied from the terms of the instrument, must be considered as *in writing* within the meaning of the statute.

It was *further held*, that the principals having acknowledged their liability for the damages that might be recovered against their factor, after possessing

the means of ascertaining the grounds upon which damages were claimed from him, the parties, who at the request of the principals had undertaken to pay such damages, were precluded in a suit on their promise from proving that the factor had acted *without authority*, and *contrary to instructions*, in selling the cotton by sample.

Even though the sale by sample had been shewn to have been contrary to instructions, the acknowledgment of liability by the principals and their procurement of an indemnity, under the circumstances of the case, would have been held a *ratification* of such sale.

It is a general principle, applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument, is in judgment of law contained in it.

Where there are two instruments, one full and explicit as to the intent and meaning of the parties, and the other general, but referring to and adopting the stipulations contained in the former, in giving a construction to the agreement of the parties, both instruments will be considered as forming but one agreement.

ERROR from the superior court of the city of New-York. Kneeland sued N. Rogers and two others for the breach of a *guaranty* given under the following circumstances: Kneeland, as the factor or agent of a mercantile firm transacting business in *Alabama* under the name and style of *L. Morgan & Sons*, having sold at the city of New-York 124 bales of cotton, belonging to the said firm, to one James Andrews, Andrews, in *January term*, 1822, commenced a suit against Kneeland for a breach of warranty in the sale of the cotton, alleging a *sale by sample*, and that the cotton delivered was not at the time of the delivery thereof of the like goodness and quality with the sample exhibited, and issue was joined in the suit thus commenced, in the *same term* of January, 1822. All the proceeds of the cotton sold to Andrews had been paid over by Kneeland to his principals, L. Morgan & Sons, except the sum of $463,31; and on being called on for the payment of that balance, he informed his principals of the commencement of the suit of Andrews against him, and told them that before he would part with the said balance, he must be indemnified against the suit. L. Morgan & Sons thereupon drew up an instrument in this form: "New-York, August 5, 1822. Messrs. N. Rogers & Sons—Gentlemen: A suit has lately been commenced in the supreme court of this state by James Andrews of Boston against Henry Kneeland of this city,

NEW-YORK, relative to a sale heretofore made by Mr. Kneeland to Mr. An-
May, 1833. drews of a parcel of cotton, then belonging to us, in which
Rogers   suit the plaintiff has laid his damages at two thousand five
v.      hundred dollars.   The sale having been made for our ac-
Kneeland.
count, we are of course liable for any damages that may be
recovered in the suit; and being desirous of providing a full
indemnity in this respect to Mr. Kneeland, we hereby author-
ize and request you to pay him all such sums of money as he
may be required to pay, as well for any damages that shall
happen to be recovered against him in the suit above men-
tioned, or otherwise, in relation to the sale of the said cot-
ton, as also all costs and charges to which he may necessari-
ly be put in that behalf, including reasonable counsel fees to
the counsel to be by him employed in relation to the said bu-
siness—your advances to Mr. Kneeland, as above, to be made
from time to time as occasion may require, or otherwise at
his election.   By complying with this request, and charging
your advances to our account, you will oblige your obed't
serv'ts."   Which instrument they signed, and procured the
signatures of the defendants to an *endorsement* thereon in this
form: "We will promptly comply with the request of Messrs.
L. Morgan & Sons as contained in the within order.   New-
York, August 5, 1832. (Signed,) N. Rogers & Sons."   The
instrument thus signed was, on the day of its date, delivered
by L. Morgan & Sons to Kneeland, who, on receiving the
same, paid over the balance of $463,31 to L. Morgan & Sons,
and took their receipt in this form: "Rec'd, New-York, 5th
August, 1822, of Bogert and Kneeland, four hundred and
sixty three $\frac{31}{100}$ dollars in full to this date.   (Signed,) L. Mor-
gan and Sons."   This sum was on the same day paid over
by L. Morgan & Sons to the defendants in this cause, to
whom L. Morgan & Sons were at the time largely indebted.
The suit of Andrews against Kneeland was prosecuted, and
in March, 1827, Andrews obtained a verdict for $1262,06,
and in May term, 1827, judgment was signed for the above
damages, and $380,86 costs; whereupon, at a subsequent
day in the same term, Kneeland commenced his suit on the
*guaranty* given by the defendants.   The declaration contain-
ed seven *special counts*, and one general count for monies lent

and advanced, monies paid and monies had and received. The *first count* states that on the 20th of September, 1821, the plaintiff had in his possession 120 bales of cotton belonging to L. Morgan & Sons, to be disposed of by him as their agent and factor for their account, and on the same day sold and delivered the same, as such agent and factor, to James Andrews, for the sum of $4993,92, which, on the 23d January, 1822, was paid to the plaintiff; that after the sale and delivery of the cotton, Andrews commenced a suit against him for the recovery of damages alleged to have been sustained by him in the purchase of the cotton, for that the bulk of the cotton did not correspond in quality or goodness with certain samples thereof, by which the purchase was claimed to have been made; that after the said suit was commenced, and before the same was tried and determined, to wit, on the 5th August, 1822, L. Morgan & Sons *were desirous* to withdraw from the hands of the plaintiff, and to pay over to N. Rogers, S. Rogers and E. N. Rogers, (the defendants in this cause,) the sum of $463,31, then in the hands of the plaintiff, being parcel of the sum of $4993,92 paid by Andrews to the plaintiff, and which the plaintiff then and there held as an indemnity in part against the suit brought by Andrews and then pending, to the end that the said defendants might retain and hold the said sum " as and for the consideration for their promise and undertaking to the said Henry Kneeland herein after specified ;" and that to induce him, the plaintiff, to pay over the said sum of $463,31 to L. Morgan & Sons, to the end that they might thereby be enabled to pay over the same to the defendants as and for the consideration of their said promise and undertaking, they, the said L. Morgan & Sons, addressed a letter or order in writing to the defendants in the words and figures following : (setting forth the instrument above mentioned in *totidem verbis ;*) and that on the same being presented and shewn to the defendants, they made, endorsed and signed a memorandum in writing on the back thereof, (setting it also forth in *hæc verba* as above stated ;) that the said instrument was on the same day delivered to him, and that upon the faith and confidence of the promise and undertaking of the defendants, he paid over to L. Morgan & Sons

the said sum of $463,31, who afterwards on the same day paid the same to the defendants, to be by them retained and holden, and which they then and there received and accepted as and for the consideration of their promise and undertaking aforesaid. The plaintiff then proceeds to aver the obtaining of the judgment of Andrews against him, the payment of the sum of $1647,03 in full of the damages and costs thereby recovered, and the payment of the costs of defence and of counsel fees expended by him in such defence, to wit, the sum of, &c. of all which premises the defendants had notice. By means, &c. The *seventh count* states the pendency of the suit of Andrews against the plaintiff on the 5th August, 1822, and sets forth the nature of the same; that the sale of the cotton was for the account of L. Morgan & Sons, who were then and there liable over to the plaintiff and desirous to provide for him a full indemnity for any damages, costs, charges and expenses to which he might be put, or for which he might be rendered liable in the said suit; and being so liable and desirous, they, on, &c. at, &c. addressed a letter to the defendants, (*setting forth the substance of the same instrument as in first count*,) who, on receiving the same, made and subscribed on the back thereof a memorandum (same as in first count;) that the said instrument, with the endorsement on the back thereof, was delivered to him on the day and year aforesaid; and that in the faith and confidence thereof, and in the confident expectation that the defendants would well and faithfully comply with, and perform the said undertaking and engagement on their part, did afterwards, to wit, on, &c. at, &c. *continue the defence of the said suit, and did then and there necessarily expend large sums of money, to wit, the sum of $1000 in and about the defence of the said suit, and did then and there look to and rely upon the said undertaking of the said defendants so signed by them for his indemnity against any recovery that might be had in the said suit against him, and all costs, charges, expenses and counsel fees for which he might be rendered liable therein;* and did also then and there forbear to seek for or obtain any other indemnity against the said suit, until L. Morgan & Sons afterwards became and were, and have ever since continued to be wholly insolvent, and unable

to indemnify the plaintiff against the said suit. The plaintiff then avers the recovery of the judgment against him, the payment of the same, &c. By means whereof the defendants became liable to pay, &c. It is deemed unnecessary to give the substance of the other counts. The defendants *pleaded* non-assumpsit and several special pleas, which were demurred to and adjudged bad on demurrer. On the trial of the cause, the letter of L. Morgan & Sons, and the endorsement of the memorandum thereon, were proved. The record of the recovery in favor of Andrews against the plaintiff was produced, and the payment by him of the judgment and of the costs and counsel fees of defence proved. The plaintiff here rested.

The defendants then offered to prove that the plaintiff, in the sale of the cotton to Andrews, sold the same by sample without authority to do so, and contrary to instructions; which evidence was objected to, and the presiding judge decided that if the *Morgans* had received the proceeds of the cotton, he would sustain the objection; whereupon it was proved that previous to the 5th August, 1822, the whole proceeds of the cotton, with the exception of $463,31, had been paid over to them. The same witness who proved the payment of the proceeds as above, also testified to the payment of the $463,-31, on the guaranty being delivered to the plaintiff, which evidence was objected to by the defendants, as proving a consideration not expressed in the paper writing and memorandum endorsed thereon for the promise of the defendants, but the evidence was received. The defendants then offered to prove, if L. Morgan and Sons had acknowledged their liability to pay the plaintiff the amount recovered in the suit against him, that such acknowledgment was made in ignorance of the facts in regard to the sale of the cotton; whereupon the judge ruled that any fraud, concealment or misrepresentation of the plaintiff might be shewn, but that the residue of the evidence offered was inadmissible. The defendants' counsel then insisted that the plaintiff ought not to recover, 1. Because the promise of the defendants, independent of the statute of frauds, was void for want of consideration; 2. That under the statute of frauds, the promise must not only be in writing, but must be supported by a consideration, and that

must be in writing; and 3. That no evidence of a considera-
tion for the promise had been offered, if such proof was allow-
able.    The presiding judge ruled that the plaintiff ought not
to be barred from a recovery on either of the above grounds.
The jury found a verdict for the plaintiff for $2437,25.    Ex-
ceptions having been taken to the several decisions, they were
subsequently argued before the court, who overruled the same
and denied a motion for a new trial, to which decision also
the defendants excepted.    The defendants sued out a writ
of error.

    *H. Ketchum*, for the plaintiffs in error.    The promise of the
defendants below was, for the want of consideration a *nudum
pactum*.    The only consideration pretended is the payment of
$463,31 by the plaintiff below to L. Morgan & Sons when
the instrument declared on was delivered, and *that payment*
being made as the balance of the proceeds of the cotton, as is
manifest from the receipt given at the time by L. Morgan &
Sons, it is utterly inconsistent with the idea that it was receiv-
ed as the consideration of a promise by any one ; but whatev-
er may have been the consideration of the promise of L. Mor-
gan & Sons to indemnify the plaintiff, it is established by the
case that the sum received by them was paid to the defend-
ants on account, to whom L. Morgan & Sons were at the
time largely indebted.    In support of this position, see *Mil-
ler* v. *Holbrook*, 1 *Wendell*, 317 ; *McDonald* v. *Neilson*, 2 *Cow-
en*, 140, 183 ; and *Atkinson* v. *Marks*, 1 *id*. 693.
    The promise of the defendants, to be obligatory, must not
only be in writing, under the statute of frauds, but must be
supported by a consideration, and *it* must also be in writing.
It surely requires no argument to show that the promise of
the defendants was to answer for the debt, default or miscar-
riage of L. Morgan & Sons.    If, in the suit against Kneeland,
Andrews obtained judgment, it was in virtue of the liability
of Kneeland, created at the time of the sale of the cotton, and
he acting as the factor of L. Morgan & Sons, their liability
originated at the same time that his originated.    The prom-
ise therefore of Messrs. Rogers was to answer for a former lia-
bility of L. Morgan & Sons.    This promise is in writing, but

no consideration for it is expressed in the instrument, and, as has been shown, none was received in fact. *Sears* v. *Brink,* 3 *Johns. R.* 211. *Leonard* v. *Vredenburgh,* 8 *id.* 29.

If the promise is not required to be in writing under the statute of frauds, on the ground that it is not a promise to answer for the debt, default or miscarriage of another, it is nevertheless in writing, and the court below erred in allowing parol evidence to be given of the consideration upon which it was founded. The idea of a pecuniary consideration for the promise is not consistent with the plain import of the writing itself, and proof therefore of such consideration was not admissible, as such proof substantially varied the writing itself. See 7 *Comyn's Dig.* 453, *Day's edition,* where, under the title "Parol Evidence," the authorities on this subject are collected. *Phillips,* 442. *Fitgburgh* v. *Runyon,* 8 *Johns. R.* 375.

The defendants below offered to prove that Kneeland sold the cotton by sample, without authority to do so and contrary to his instructions, which evidence was objected to, and the objection sustained by the court on the ground that Messrs. Rogers were barred by the verdict and judgment in the suit of Andrews against Kneeland, and that L. Morgan & Sons having received the proceeds of the sale of the cotton, could not deny their liability over to Kneeland for the amount recovered of him by Andrews. It is insisted that if Kneeland sold this cotton and warranted it, contrary to the instructions of his principals, the money received by him therefor was the money of his principals; and though, perhaps, after the receipt of the money by the principals, they may have been liable to the purchaser for a breach of the warranty, yet the receipt of the money could not make them liable to their own agent, who had violated their orders. True, the article might have brought more on account of the warranty, but the excess did not belong to the agent, for he could not profit by his own wrong; and were it otherwise, the agent had so mingled the money, that the part to which he might lay claim was incapable of separation, and therefore belonged to the principals. *Paley on Agency,* 4, 5, *n. b. Floyd* v. *Day,* 3 *Mass. R.* 403. *Massey* v. *Banner,* 1 *Jac. & Walk.* 241.

*G. Griffin*, for the defendant in error. No difficulty is presented by the form of the guaranty in this case. The written request of L. Morgan & Sons, and the acceptance of it by the Messrs. Rogers constitute but one contract, and are to be construed together, as if both had been in one and the same instrument, and signed by the defendants below. In *Stead* v. *Liddard*, 8 *J. B. Moore's Rep.* 2, where the agreement of the parties was to be gathered from several distinct pieces of writing, made at different times, Lord C. J. Dallas, in giving the opinion of the court, says : " The guaranty given by the defendant referred to the original letter written by the plaintiff to his son, and recognized and adopted the terms as therein stated, and it must be considered as having such retrospective operation, as the defendant thereby engaged to pay or hand over to the plaintiff or his bankers all such moneys as might come to his hands or be remitted to him by his son, agreeably to the former letter. The whole, therefore, forms but one transaction, and more particularly so, as it was written on one and the same sheet of paper." 1 *Bing. Rep.* 196, *S. C.*

The second exception taken on the trial of the cause is founded upon the exclusion of evidence offered by the defendants, that Kneeland sold the cotton by sample, without authority to do so ; and this exclusion was put by the presiding judge on the condition that it should appear that L. Morgan & Sons had received the proceeds of the sale. The exception, therefore, assumes or concedes that L. Morgan & Sons did receive those proceeds. The judgment record in the suit of *Andrews* v. *Kneeland*, shews that the recovery against the latter amounted to $1268,06, exclusive of costs, and the guaranty satisfactorily shews that those costs, together with all the costs and counsel fees on the part of the defence, were incurred by Kneeland with the knowledge and at the special request of L. Morgan & Sons, with a view to give them the chance and benefit of a successful defence. It necessarily follows, therefore, that Kneeland, as the agent of L. Morgan & Sons, sold the cotton for $1268,06 beyond what it was fairly worth, and paid over or accounted for the whole of this excess to them. Now, is it possible that under such

circumstances, L. Morgan & Sons can be permitted to say to the defendant in error, "True it is that you as our agent sold our cotton for a most excellent price, and made it produce upwards of $1200 beyond its fair value, and you have very faithfully paid over to us every dollar of the proceeds. It is also true that you have been sued by the purchaser for that excess, and that you defended the suit to the last extremity at our request and for our benefit, on the faith of a guaranty which we procured for you, and which was deemed satisfactory at the time. It is further true that you have always contended that the sale was not made by sample, and on the first trial the jury believed the testimony adduced by you to that effect ; but on the second trial another jury came to a different conclusion, and upon that ground alone you were finally defeated, and hence it does appear that you did make the sale by sample, and because you did so, and without our authority, we will not now refund to you one dollar of the excess which you so paid to us, and which you have been thus compelled to refund to the purchaser, together with very heavy costs and counsel fees." If such language would not be tolerated from the lips of L. Morgan & Sons, neither can it be from the present plaintiffs in error, who, by the guaranty, have voluntarily assumed their place and taken upon themselves their responsibility. By accepting the proceeds, L. Morgan & Sons ratified the sale made by their agent. *Cornwal* v. *Wilson*, 1 *Ves. sen.* 509. They accepted them, *cum onere*, nor can it be doubted that independently of the guaranty and in the absence of any fraud or misrepresentation on the part of Kneeland, which is not pretended and cannot be presumed, the excess beyond the fair value of the cotton which he paid to L. Morgan & Sons, was, in judgment of law, after he had satisfied the recovery against him, so much money had and received by them to his use, and that he could have sustained a suit against them for it. *Howes* v. *Martin*, 1 *Esp. N. P. C.* 162. *Rumsey* v. *Gardner*, 11 *Johns. R.* 439. This is the construction which Morgan & Sons themselves have put upon the transaction, for in the guaranty they say : " The sale having been made for our account, we are of course liable for any damages that may be recovered in the suit." Mark the

expression, "we are of course liable," not by virtue of any ex-press agreement to that effect, but by necessary legal implica-tion ; and it is scarcely necessary to repeat that whatever lia-bility attached to the Morgans in this respect, the plaintiffs in error assumed by their guaranty.

The third exception relates to the form of the guaranty, and involves the question of its validity or invalidity, under the statute of frauds. The objection insisted on by the other side, is, that it is void for the want of consideration, apparent on the face of it. On the part of the defendant in error it is confidently insisted that a good and sufficient consideration does appear on the face of it, consisting both of injury to him-self and of benefit to the Morgans ; and that should the fact be held otherwise, a valuable consideration may under the cir-cumstances of the case be shewn by parol, and is satisfactori-ly shewn by the testimony in the cause ; and that the injury to the defendant in error, induced by the guaranty, and ap-parent on the face of it, consisted in his being thereby led to continue the defence of the suit, and thus expose himself to an increase of costs and expenses ; and that the benefit to the Morgans consisted in the chance which that defence gave them of eventual success, and thus protect them or their sub-stitutes the Messrs. Rogers, against their liability to answer over. The correctness of these positions will satisfactorily ap-pear from an examination of a few of the numerous decisions on this branch of the statute of frauds. In *Stadt* v. *Lill*, 9 *East*, 348, the contract was : "I guarantee the payment of any goods which I. Stadt delivers to I. Nichols." Lord El-lenborough ruled at N. P. (and the K. B. sustained the de-cision,) "that the stipulated delivery of the goods to Nichols was a consideration appearing on the face of the writing ; and when the delivery took place the consideration attached." There was no express undertaking on the part of Stadt for the delivery of the goods, and no delivery had taken place when the contract was given ; but the contract was given in the expectation that Stadt upon the credit of it would deliver the goods ; he did deliver them accordingly, and therefore the consideration attached. So here the Messrs. Rogers gave the guaranty in the faith that Mr. Kneeland would continue the

defence of the suit; he did continue it on the credit of the guaranty, and therefore the consideration attached. In *Morris* v. *Stacey*, 1 *Holt's N. P. Rep.* 153, the guaranty was in these words: " I herewith hand you drafts drawn by Mr. Wallis and accepted by Mr. Bromley, and endorsed by R. Burns; and should the bills not be honored when due I promise to see that they do so." The defendant's counsel conceded a point directly applicable to the case now under consideration, and decisive in its favor, viz. if it had appeared that something was to be done subsequent to the signing of the paper, it would have been sufficient and within the case of *Stadt* v. *Lill.* But Gibbs, C. J., held that it appeared on the face of the letter that in consideration that the plaintiff would take the notes, the defendant would indemnify him, and that the consideration was therefore apparent. In *Boehm* v. *Campbell*, 3 *J. B. Moore's Rep.* 15, the guaranty was as follows: " Our mutual friends, Messrs. R. J. Sawyer & Co. having accepted the underwritten bill, drawn on them by your firm, I hereby give my guaranty for the due payment of the same, should it be dishonored by the acceptors." The C. P. adopting the decision in *Morris* v. *Stacey*, assimilated the one case to the other, and put the following construction on the guaranty, as apparent upon the face of it, viz. that in consideration that the plaintiff would forbear to sue Sawyer & Co. and take a bill on and accepted by them, the defendant undertook to guaranty its payment, if it should be dishonored by them. In *Pace* v. *Marsh*, 1 *Bing. Rep.* 216, the guaranty was as follows: " Mr. Levie having chartered your ship Roberts, to bring a cargo of timber from New-Brunswick, and the same being landed to the charterer, and he having paid you one half of the freight and given you his acceptance for the remaining half, at four months date, I engage to be accountable to you for the amount of said acceptance, should it not be paid when due." Here, as in the principal case, the guaranty recites the facts; and in that respect both cases are alike; but in the case cited, every thing had been done on the part of the plaintiff: the cargo had been delivered and Levie had given his acceptance for the remaining half of the freight; whereas, in our case, Kneeland, when he received the guaranty, had done little or noth-

ing, and almost every thing on his part remained to be done; for it is expressly stated that the suit had then lately been commenced. Nor is the language of the court in *Pace* v. *Marsh* less applicable to the case under consideration. Dallas, C. J. says : " There are cases which turn on distinctions extremely nice, and ought not to be encouraged beyond what the law strictly warrants ; because parties too frequently by entering into such engagements occasion extensive credit to be given, and then get out of their obligation in any way they can. I think the consideration clearly appears in the present instance, independently of cases which might be adduced in support of the guaranty ; but the case of *Boehm* v. *Campbell,* I cannot distinguish from the present." And Mr. Justice Burrough added : " It is plain on the face of this guaranty that the bill would not have been taken unless thus secured." In *Ryde* v. *Curtis,* 8 *Dowl. & Ryl.* 92, the guaranty was thus expressed : " I do hereby agree to become security for Mr. R. G., now your traveller, in the sum of £500, for all money he may receive on your account." Abbott, C. J., giving the decision of the K. B. says : " I think it sufficiently appears on the face of this instrument that the consideration for the guaranty was the continuance of the traveller in the service of the plaintiff. I see no doubt about it." And it is almost too obvious to remark that in this case it appears with at least equal certainty on the face of the instrument, that the consideration for the guaranty was the continuance of the defence of the suit of Andrews against Kneeland, for the benefit of the Morgans.

But if, by possibility, the court should be disinclined to adopt the above decisions, or should hold them inapplicable to the present case, the defendant in error relies with entire confidence upon the position, that it is competent for him to establish a consideration for the guaranty by parol, and that such consideration is satisfactorily shown by the testimony in the cause. It appears distinctly, that Kneeland refused to part with the balance of the proceeds of the cotton then in his hands, amounting to $463,31, until he received the guaranty, and that simultaneously with the receipt of it, and upon the faith of it, he paid over the balance to L. Morgan & Sons ;

and we find *that amount* entered on the same day, on the books of the Messrs. Rogers, to the credit of L. Morgan & Sons, as appears from their own shewing. This evidence brings the case directly within the decisions of *Leonard* v. *Vredenburgh,* 8 *Johns. R.* 29, and *Dewolf* v. *Rabaud,* 1 *Peters' R.* 476. If any doubt should still remain on this part of the case, it may be presented in another point of view : Morgan & Sons, under the facts stated in the guaranty, were unquestionably at least under a *moral obligation* to indemnify the defendant in error, and that obligation constituted a sufficient consideration for the express promise contained in the guaranty. *Doty* v. *Williams,* 14 *Johns. R.* 378. But it is said in the opening argument, that the written receipt of L. Morgan & Sons to Kneeland for the $463,31, shows that it was in full of the claim of the former against the latter, "which is utterly inconsistent with the idea that this amount was received in any sense as a consideration for a promise." It is confidently submitted, that there is no inconsistency in the case, and that the paying over of the balance by Kneeland, on which he had a valid lien for his indemnity, in consideration of the guaranty as a substitute, was perfectly compatible with the acquittance, which he thereby took for his own discharge. Suppose the receipt had in terms stated that the money was paid in consideration of the guaranty, Kneeland would then have still remained liable for the balance, and his indemnity having thereby been secured to his satisfaction and acceptance, he might have been sued for the balance the next day ; and can it be supposed that he would have purchased with his own money an indemnity from the Morgans against a claim for which they, under their own hand and at the same time, acknowledged themselves to be " of course liable" ? Was it ever before called in question, that a party could not make his giving up to the rightful owner goods on which he had a subsisting lien, a valid consideration for a substituted indemnity ? The language of the receipt is free from embarrassment, for it is well settled that parol evidence is admissible to *explain* or *even contradict* the terms of a receipt. *Tobey* v. *Barber,* 5 *Johns. R.* 68 ; and as already remarked, the parol evidence conclusively shows that Kneeland refused to part with the bal-

ance till he received the guaranty, and of course that the one was the consideration for the other.

The fourth exception is only a reiteration of the second, with two modifications, viz. 1st. That it was necessary for Kneeland to show that the Morgans, in recognizing or acquiescing in his acts as their agent, did so with full knowledge of the facts; and 2. That the Morgans, when they did so recognize or acquiesce, did it in ignorance of the facts. The presiding judge, thereupon decided, "that any fraud, concealment or misrepresentation of the plaintiff might be shown." It therefore necessarily follows, that any ignorance on the part of the Morgans, induced by the fraud, concealment or misrepresentation of Kneeland, must be laid out of consideration, as not embraced by the exception. The exception thus qualified may be readily disposed of. There are two ways in which a principal may adopt the unauthorized acts of his agent, viz. either by express agreement or by implication. In the latter case, it is true that the adoption in order to be binding must be made with knowledge of all the circumstances, and when once made, it cannot be revoked, *Smith* v. *Cologan*, 2 *T. R.* 188, *in note ;* and the acts of the principal are, in such case, to be liberally construed in favor of the adoption. *Codwise* v. *Hacker*, 1 *Caines' R.* 526. Here the adoption is by express contract, viz. the guaranty. Now, can it be gravely contended that a party may avoid his own express contract on the ground of ignorance, in a case where that ignorance has been in no way induced by "the fraud, concealment or misrepresentation" of the other party, who has paid a valuable consideration for it, and acted upon the faith of it ? And what injury has the party insisting upon this alleged ignorance sustained in consequence of it ? None whatever. On the contrary, the sale by sample, to which the alleged ignorance is applied, has been the means of putting into the pockets of L. Morgan & Sons upwards of $1200, which, it has been judicially ascertained, they were never entitled to, and which they otherwise never would have received ; and now, when they or their substitutes, the Messrs. Rogers, are called upon to refund it, in consequence of Kneeland's having been compelled to pay it back to the purchaser, they set up the

allegation of ignorance, not for the purpose of showing any damages sustained in consequence of it, but as an apology for not refunding.

*Ketchum*, in reply. If according to the authorities cited for the plaintiffs in error in the opening argument, it is the law that a factor, who in contravention of his principal's orders, obtains an advantage, will not be allowed to profit by that advantage, the position has not been shaken by the learned counsel's argument. If it be manifest that when an agent so mingles the funds or property of his principal with his own as to render the portions of the respective owners incapable of separation the whole mass belongs to the principal, it is equally manifest, since the learned counsel's argument has been furnished. The opening argument on this point has not been met, because it is not perceived how it is met by informing the court, if it were even practicable to do so accurately, how much more the cotton in question sold for by means of the warranty, and that by this amount L. Morgan & Sons have been actually profited; the important questions addressed to their agent Kneeland, by L. Morgan & Sons, and their sureties, the plaintiffs in error, are still unanswered. "What right had you to warrant the property contrary to express orders? You say that the proceeds of the cotton exceed the actual value of it, and the excess belongs of right to you ; we reply that you were not only not authorized, but actually *forbidden* thus to mingle your property with ours." If this reasoning be just, the payment over of the proceeds to L. Morgan & Sons cannot impair its force, for those proceeds belonged to L. Morgan & Sons, and in receiving them they became possessed of their own property only, unincumbered by any liability to their agent, whatever liability his *unauthorized* undertaking might have brought upon himself.

The learned counsel contends, "that by accepting the proceeds, L. Morgan & Sons ratified the sale made by their agent, and that independently of the guaranty, and in the absence of any fraud or misrepresentation on the part of Knee-

NEW-YORK,
May, 1833.

Rogers
v.
Kneeland.

land, it cannot be doubted that the excess beyond the fair value of the cotton, which he paid to L. Morgan & Sons, was in judgment of law, after he had satisfied the recovery against him, *so much money had and received by them to his use,* and that he could have sustained a suit against them for it." It may well be, that by accepting the proceeds of the cotton, L. Morgan & Sons ratified the sale, or in other words, such acceptance was a recognition of the fact that the cotton had been sold, but such acceptance was not an acquiescence *in the sale by sample* or a warranty, if such sale by sample or warranty was made contrary to instructions. A contract of sale and a contract of warranty, though made at the same time, are distinct, and not inseperably connected, and in the case before the court, the agent was authorized to make the one, but not the other. *Gibson* v. *Colt, 7 Johns. R.* 390. It certainly cannot be contended, that Messrs. L. Morgan & Sons could acquiesce in the sale by sample of their agent, unless they knew the fact of a sale by sample, and it is equally obvious that any act of L. Morgan & Sons, claimed to be an acquiescence, must be shown to be subsequent to such knowledge. *Paley on Agency,* 144. 1 *Johns. Cas.* 110, 2 *T. R.* 188, *note.* The argument advanced on the other side, is that the very payment over of the proceeds, *ipso facto,* conveys the intelligence that the cotton was sold by *sample,* and the receipt of it is an acquiescence in such sale. The whole of the proposition, if it has any substantial foundation, must rest upon the fact, that although the sale by sample was made contrary to orders, such sale was subsequently acquiesced in by L. Morgan & Sons, after knowledge that their instructions had been violated. It has been shown that the mere payment over and acceptance, cannot amount to such acquiescence apart from the guaranty, and it is not pretended by the learned counsel, nor was it by the court below, that the guaranty itself proved such an acquiescence. Indeed how could it ; in that paper, it is true, L. Morgan & Sons acknowledged their liability to pay the damages and costs which might be recovered by Andrews, but the ground of such liability is distinctly set forth in the guaranty itself ; It stated that a suit had lately been commenced " *relative to sale*" [not a sale and warranty] of cotton made by Kneeland

for them, and the *sale* having been made on their account, they acknowledge themselves, of *course*, liable to pay any damages which should be recovered " *in relation to the sale*," &c. ; that is to say, the undisputed, the of *course* liability of a principal for the authorized acts of his agent is acknowledged—*nothing more*; no acquiescence in the *unauthorized warranty* of the cotton. It was not incumbent on the plaintiffs in error to shew fraud or concealment on the part of the defendant in error, to entitle them to sustain the exception now under consideration; it was, on the contrary, the duty of the defendant, if he meant to charge L. Morgan & Sons, on the ground of their acquiescence in an unauthorized act, to shew on his part a full development of the sale and warranty ; the *onus probandi* was cast upon him, not upon the plaintiffs. *Trimble* v. *Thorne*, 16 *Johns. R.* 152. Let us suppose the proceeds of the cotton had been paid to L. Morgan & Sons at the time of its sale, and that the amount of the judgment in the case of *Andrews* v. *Kneeland* had been paid by the latter, and this action was against L. Morgan & Sons ; on the trial the defendants offer to shew that the cotton was warranted by Kneeland, contrary to their orders ; the testimony is objected to, on the ground that although such sale by sample was in violation of orders, yet as the money had been paid over to L. Morgan & Sons, they had acquiesced in the acts of their agent by receiving the money, and if this were not an acquiescence, that after the suit had been commenced against the agent, the principals had acknowledged that the suit being *relative to the sale*, they were of course liable for the damages and costs which might be recovered against their agent, as the cotton was sold on their account, *bringing no proof whatever that the fact had been communicated to L. Morgan & Sons, of the violation of their orders* : would not the court say, we shall admit the evidence, unless it be shown affirmatively that L. Morgan & Sons, after being advised of the facts which had transpired, did acquiesce expressly or by implication ? If the court would allow such a question to be put by L. Morgan & Sons, it is admitted that the plaintiffs in error, as their sureties, would not be denied the same right. So far from L. Mor-

gan & Sons having been informed by Kneeland of the sale by sample, it would seem from language put in the mouth of his client, in the gentleman's argument, that he denied having sold the cotton by sample ; though it appears from the bill of exceptions, as well as from the report of the case of *An-drews* v. *Kneeland*, that the fact of the sale having been made by sample was not controverted, but the question was whether or not such a sale was a warranty. The cases cited on the other side do not conflict with the grounds taken in the opening argument, or in this reply ; in *Cornwall* v. *Wilson*, 1 *Vesey, sen.* 510, the marginal note is as follows : " Plaintiff a factor abroad having exceeded the price limited for a purchase of hemp, the defendant *who objected to the contract*, but afterwards re-shipped and disposed of it on a new risk, was ordered to account for the whole at the cost price." This whole case, it will be seen, turns upon the fact that the principal *after know-ing the violation of his orders* by his agent, took the goods and used them as his own, thereby in the judgment of the lord chancellor acquiescing in the act of his agent. The other cases it is thought do not touch the point under discussion.

Before replying to the learned counsel's observations upon the third exception, it will be well to refer to the precise liability of the parties before the paper in controversy was signed. Kneeland, as the factor of the Morgans, had sold their cotton to Andrews of Boston, and warranted it conformably (I will admit for the sake of argument,) to the instructions of his principal. By virtue of this warranty, Kneeland had rendered himself personally liable to Andrews, and the warranty being broken, Andrews sued Kneeland for damages in this court. The capias in the suit of *Andrews* v. *Kneeland* was returnable in January term, 1822, the issue was joined in the same term, the cause was noticed for trial at the April and June circuits of the same year, and *on the 5th day of August*, 1822, the paper writing on which this suit was brought bears date. At this stage of the suit, after, as the court must infer, Kneeland had put in an affidavit of merits and decided to defend the suit, the Morgans sign a request addressed to the plaintiffs in error, to *pay the defendant in error all such sums of money as he may be re-quired to pay, &c.*, with which request the plaintiffs complied in

writing.   Now the first remark that occurs here is, that while Kneeland's liability originated on the warranty, *at* or *before* the time it was made, the liability of the Morgans to him originated at the same time ; from that time to the signing of the paper, both Kneeland and the Morgans had been liable for all damages that might result from the breach of the warranty. Kneeland having deemed it his duty to defend the suit brought to recover these damages, and having thus far defended it in good faith, the Morgans were also liable over to him for all the costs and expenses to which, up to the 5th of August, 1822, he had been subjected.   It is important not to mistake the liabilities of the parties respectively, on account of the nature of the contract on which the suit against Kneeland was instituted ; it was a contract of warranty, a civil contract on which the damages resulted from the undertaking of the party making it, and though these damages were to be ascertained at a subsequent time, the liability for them originated at the time of the sale, when the contract of warranty was entered into. Kneeland's contract with Andrews was, " I warrant the bulk of the cotton to be equal in goodness to the samples, and if not equal I promise to pay the difference in value between the samples and that part of the bulk, which on examination shall prove inferior ;" and the Morgans' agreement with Kneeland was, "We will be liable over to you for these damages." So far then as the damages recoverable on this warranty, and the costs which had accrued on the 5th of August, 1822, were concerned, the guaranty of the plaintiffs in error was to be answerable for the *past* liability of the Morgans to Kneeland, and Kneeland was already liable to Andrews for these damages and for the last mentioned costs.   My clients then come in and promise to answer to Kneeland for these antecedent liabilities of the Morgans, and the question is, what consideration for this promise is apparent on the face of the instrument signed by them ?   The precise meaning of the learned counsel in his observations upon the form of the guaranty and its validity or invalidity under the statute of frauds, is not very obvious ; in one part of his observations he contends, " that a good and sufficient consideration appears on the face of the guaranty, consisting of injury to Kneeland and benefit to the Morgans, *and*

NEW-YORK, *that the injury to the defendant in error consisted in his being*
May, 1833. *thereby led to continue the defence," &c.* while elsewhere he ex-
Rogers presses the consideration for the guaranty apparent on the
v. face of the instrument, to be *the continnance of the defence of the*
Kneeland. *suit of Andrews v. Kneeland, for the benefit of the Morgans.* It
is not easy to comprehend how the injury which A. might sus-
tain, by a reliance upon the written promise of B. can appear
on the face of the writing itself, unless B. obligate himself to
do something in return for the promise of A. ; where there is
no such counter or mutual promise, the promisee may or may
not be damnified, according to the course of his subsequent
voluntary actions.    I shall therefore assume that the mean-
ing of the learned counsel was in conformity with the decision
of the court below—*that there was a consideration implied in the
agreement that Kneeland should continue the defence of the suit
against him.*    The first objection to this construction of the
contract is, *that there is no count in the declaration conformable to
it.*    If the implied promise that Kneeland should continue the
defence of the suit were contained in this guaranty, it should
have been set forth in the declaration as the consideration of
the promise of the plaintiffs in error, otherwise the defendant
in error cannot now set it up to sustain his judgment.    *Poth-
ier on Obligations, 2 vol.* 398.    The judgment must be *secundum
allegata.*    The plea of the plaintiffs in error in the court below
was that they did not promise *in manner and form* as the decla-
ration set forth ; should the judgment be sustained on this con-
struction of the contract, an issue in which the plaintiffs in er-
ror never joined, because they were never apprized of it till after
the trial, will have been found against them.    This objection
is properly presented to this court, as it grows out of the writing
itself, which it is the peculiar province of the court to construe.
Secondly ; I deny that the guaranty admits of this con-
struction.    The writing contemplates the payment by Knee-
land of the damages, costs and counsel fees ; it says nothing,
in terms, about his *continuing the defence,* and his obligation to
do so, if such there be, must therefore result from an implied
obligation to pay all costs and counsel fees incidental to a
complete defence.    L. Morgan & Sons request the plaintiffs

in error to pay the defedant all such sums of money as he may be required to pay, as well for any damages that should happen to be recovered against him in the suit, *or otherwise* in relation to the sale of said cotton, as also all costs to which he may be necessarily put, &c. ; that is to say, pay Kneeland all sums of money he may be required to pay in the suit, or required to pay *otherwise than in the suit* relative to the sale. Now, if the continuance of the defence be the consideration of the plaintiffs' promise, then, if the defence had not been continued, they would not have been bound to pay Kneeland's advances ; but let it be supposed that the suit had been discontinued, and upon being required, *otherwise than in the suit,* Kneeland had paid the claim of Andrews, would not the plaintiffs in error have been equally answerable over to Kneeland ? In this view of the guaranty, Kneeland was at liberty to continue the defence of the suit or not, at his election, so far as there are any obligations or restraints contained in the writing. The truth is, and the court cannot fail to see it, that the duties and obligations of both L. Morgan & Sons and Kneeland were *not intended to be varied* by this writing, but those duties and obligations, as they existed before, were recognized in that instrument. If before the writing, L. Morgan & Sons were not liable over to Kneeland, neither were they afterwards ; if before such writing Kneeland was bound to defend the suit, he was equally so subsequently to its execution. Kneeland could continue the defence of the suit, *or otherwise* adjust the claim of Andrews, in the same manner and to the same extent as he could have done independently of the writing. In 7 *Cranch,* 70, it is laid down, " To charge one person with the debt of another, the undertaking must be clear and explicit." This can be the only construction put on the instrument ; for the word " otherwise" in the writing must have some meaning, and unless this construction be given to it, it becomes a word without meaning.

There is another reason why the defence of the suit by Kneeland cannot be regarded as the consideration of the promise made by the plaintiffs in error. This promise is collateral to that made by the principal debtors, L. Morgan & Sons, and the consideration for the promise of L. Morgan & Sons must

be the consideration of the collateral one made by their sure-
ties. The consideration of the promise made by L. Morgan
& Sons is expressed on the paper writing, and is their antec-
edent liability to indemnify their agent against loss on account
of his engagements on their behalf; they declare that *in re-
spect of their liability,* they are desirous of providing full indem-
nity, &c. As there is no *new consideration* moving from Knee-
land to the plaintiffs in error apparent on the face of the pa-
per, this expressed consideration is the consideration for their
promise, and this excludes the consideration contended for on
the other side. That the plaintiffs in error may not be mis-
apprehended on this point, I beg leave briefly to recapitulate
the argument intended to be presented. According to the
plaintiffs' construction of this guaranty, there is no promise of
L. Morgan & Sons contained in it, but a pre-existing liability
on their part is recognized ; so that if this action had been
brought against L. Morgan & Sons, instead of the plaintiffs
in error, it could not have been founded on any promise made
by L. Morgan & Sons contained in the paper, but on their an-
tecedent liability acknowledged by the paper, the promise of
the plaintiffs in error being to answer in fact for such past lia-
bility ; but if it should be adjudged that L. Morgan & Sons
have promised in the guaranty, still their past liability is the
*express* consideration for that promise, my client's promise be-
ing collateral and resting on the same consideration.

It would seem from the learned counsel's argument that he
would wish the court to regard the promise of my clients as
an *original* collateral undertaking, assimilated to the first class
of cases defined by Kent, chief justice, in *Leonard* v. *Vreden-
burgh,* and recognized in *Bailey* v. *Freeman,* 11 *Johns. R.* 221.
To this class belong the cases of *Stadt* v. *Lill,* and some oth-
ers cited by the learned counsel. It will be seen, by reference
to *Roberts on Frauds, p.* 219, and to the two cases from *John-
sons' Reports,* last referred to, that it is essential to the validity
of an original collateral undertaking, that the liability of the
principal debtor should be created *at the same time* with that of
the grantor. The definition of this class of cases is, " a
case in which the guaranty or promise is collateral to the
principal contract, but is made *at the same time,* and becomes

an essential ground of the credit given to the principal or direct debtor." 8 *Johns. R.* 39. In this case the principal debtors are L. Morgan & Sons; the promise of Messrs. Rogers is collateral to theirs, and it wants the essential ingredient of an original collateral undertaking, as the obligation of the principal debtors did not originate at the time of signing the paper, but had previous existence. Vide also *Chaffee* v. *Thomas, 7 Cowen,* 359. In regard to the cases on this branch of the subject, cited by the learned counsel from the English books, I will not trouble the court with a review of them in this place, but respectfully submit one or two general remarks applicable to some if not all of them. The decisions in these cases were made at a time when the English courts yielded a most reluctant assent to the decision in the leading case of *Wain* v. *Warlters,* and the principle embraced in this decision was not fully established in England until the case of *Sanders* v. *Wakefield, 4 Barn. & Ald.* 595. There was great justice in the remark made by Best, Ch. J. in *Darnell* v. *Trott, 4 Carr. & Payne,* 82 : "I think the statute of frauds has been put aside too much, and Westminster Hall thinks so too." The supreme court of this state, in *Sears* v. *Brink,* early adopted the decision in *Wain* v. *Warlters,* and have adhered to it in good faith ever since, until the principle it sanctions has been expressly incorporated in our re-enactment of the statute of frauds. *Vide 3 Kent's Comm.* 86, and 2 *R. S. p.* 135, *tit.* 2, *sec.* 2. This statute does not alter the law as it stood before, and I submit whether, in view of this statute, the agreement now before the court is one *expressing* the consideration for the promise of the plaintiffs in error to be the continuance of the defence by Kneeland. It may excite some surprise that the learned counsel has bestowed such great pains and employed so much learning to prove that the continuance of the defence by Kneeland was the consideration of Messrs. Rogers' promise, when the pleadings and the proceedings at the trial shew that such a consideration was never before for a moment relied upon. In seven of the eight special counts of the declaration, the consideration of the promise is stated to be the balance, viz. $463,31, due the Morgans, re-

maining in Kneeland's hands, and which at the time of his receiving the paper was paid to them. The evidence of Kneeland's attorney shews that the ground upon which Kneeland placed his claim against Messrs. Rogers was, that the money received by L. Morgan & Sons of Kneeland had been paid to the defendants, Messrs. Rogers.

The learned counsel next contends that it is competent for the defendant in error to establish a consideration for the guaranty by parol. Admit for a moment the correctness of this proposition, how can the payment of the $463,31 be shewn to be such a consideration? If Kneeland had no *lien* upon this balance, but was bound to pay it to the Morgans as a debt due them, then surely the payment of it cannot be a consideration to support any promise. It was incumbent on the learned counsel to have shewn that Kneeland had such lien. On the supposition that Kneeland was authorized to sell the cotton by sample, the Morgans are doubtless liable over to him for any damages he may have sustained thereby; but a factor has not a lien upon the funds or property of his principal for *every liability* he may have incurred on behalf of his principal; his right of lien on his principal's property is not coextensive with his right of action against his principal. It is laid down that the general lien of a factor "is only to be established either by express contract or by that which operates as evidence of a contract—the usage of trade;" *Paley on Agency*, 108; and also *that general liens are founded on custom only, and therefore to be taken strictly, Heath, J. in Houghton et al.* v. *Matthews, 3 Bos. & Pul. 485, et vide the whole of this case, also* 15 *East,* 542, 7 *id.* 224. In this case there was no express agreement giving a lien to Kneeland to indemnify him against a warranty entered into for his principals, nor is there believed to be any usage to that effect from which such agreement can be inferred, of which the court is judicially informed. It was therefore incumbent on the counsel for Kneeland to have established, if he could, the usage by proof, which he has omitted to do. A usage giving a lien to a factor in a case like this would be most inconvenient, for it is an almost universal practice for factors to sell cotton in their own name, and to sell by sample; thus, under the established decisions

of the court, the factor is rendered liable on his warranty. It is not unfrequent for the cotton purchased to be shipped immediately to a foreign port, where in numerous instances it lies in store for a length of time before it is opened and the interior of the bales examined ; if, upon such examination, the bulk of the cotton is found inferior to the samples, the factor is first applied to on his warranty. Now can it be reasonable that the funds of the principal received for the cotton should be locked up an indefinite length of time in the hands of the factor, to have it determined whether the factor will be damnified by reason of his liability for his principal on the warranty ? or could a factor, who had sold his principal's cotton by sample, retain the proceeds in his hands until indemnified by his principal ? There can no hardship result from denying a factor a *general lien* in cases like the present, for it is competent for him to secure himself against loss by making an express contract for a lien. In *Drinkwater* v. *Goodwin, Cowper*, 251, the factor became security for his principal ; " he knew," in the language of Lord Mansfield, " very well that for a general balance of his account he had a lien, but he doubted whether such a lien would extend to a case in which he was only surety for his principal, and therefore an express agreement was made giving him a lien. So in the present case, if the right of lien was not clearly established, (for liens are to be taken strictly,) Kneeland should have created it by express agreement. Besides, the factor can always exonerate himself from personal liability on the warranty, by giving up the name of his principal at the time of sale. " The usage giving a lien is presumed to have been founded on contracts repeated so frequently and so notorious that every body must be considered to take notice of it," *Per Rook, J. in Oppeden* v. *Russell*, 3 *Bos. & Pul.* 50. If there were no lien on the balance in Kneeland's hands, it was in legal contemplation a debt absolutely and unconditionally due to the Morgans so soon as received from Andrews, which was at the time of the sale to him ; and the subsequent commencement of the suit by Andrews could not create the lien, according to any known usage. If there be any usage of this kind, which has been judicially recognized by this court, or which they

are bound so to recognize, it was incumbent on the learned counsel to have shewn it. Can the learned counsel prove that where a factor has no lien upon his principal's funds in possession, the commencement of a suit against him, growing out of his principal's concerns, does *ipso facto* create a lien ? If then, in this view, Kneeland had no lien for this balance of $463,31, in the language of J. Sutherland, 2 *Cowen*, 183, "it necessarily follows that the voluntary restoration of that which the law would have compelled him to restore can form no consideration" for the promise. It is not sufficient to shew that it would be reasonable and just that the factor should have such a lien; for the inquiry is, was it the contract of the parties that there should be such a lien reserved to the factor ? and in the absence of an express *contract to this effect, is the court judicially informed* of any usage which created a contract between the Messrs. Morgans and Kneeland, at the time when the cotton was put in Kneeland's hands, of the following import : "We, L. Morgan & Sons, authorize you, Henry Kneeland, to sell our cotton now delivered to you by sample, and receive the proceeds thereof, and if before you pay the proceeds to us, you are sued on account of the sale, we authorize you to hold on to those proceeds for your indemnity against the suit ?" If this were not the contract, then there is no lien; for there is no law giving a lien to a factor; the law is that he may have such a lien where the contract with his principal authorizes it. " The courts will not now originate a lien where none has before been allowed to exist." *Hussey* v. *Cristie*, 9 *East*, 426. Had the plaintiffs in error been permitted to shew that the cotton was sold by sample contrary to the instructions of the Morgans, they would completely have shewn that Kneeland had not the lien in question. 13 *Petersdorf*, 763, *Eng. ed., in note referring to Gurney* v. *Sharp.*

Again ; admit that the defendant in error is at liberty to prove by parol that the payment of the $463,31 was the consideration of the Messrs. Rogers' promise, he must prove it *secundum allegata.* Now it may be safely affirmed that this proof supported no one count in the declaration, and it shewed beyond contradiction or cavil, that if the payment of the $463,31 was ever received by any one as a consideration of a promise,

NEW-YORK,
May, 1833.

Rogers
v.
Kneeland.

it was received by L. Morgan & Sons, and there is *no proof* that it was ever paid to the plaintiffs in error as a consideration for their promise, or that it was paid to the Morgans *at the request of the plaintiffs in error.* The payment to the Morgans by Kneeland will not support the promise of the plaintiffs in error. *Atkinson* v. *Manks,* 1 *Cowen,* 708. In that case, Booth, living in England, had funds or goods in the hands of Manks, living in New-York ; Atkinson, being a creditor of Booth and wishing security, got Booth to draw an order on Manks in favor of Atkinson for £1642 sterling, payable in his, *Booth's, goods or the proceeds thereof ;* the order was accepted by Manks. Mr. Justice Sutherland, after shewing that this order is not a bill of exchange, observes, in page 708, " The order not being a bill of exchange, the consideration which passed between *Booth* (Kneeland) and *Atkinson* (Morgan) could not enure to the support of the promise made by *Manks* (Rogers.)" So that if Kneeland were at liberty by his declaration to prove that the promise of Rogers was in consideration of the $463,31 paid by him to the Morgans, the consideration would not support the promise, and the learned and skilful pleader who drew this declaration doubtless knew that such a count would be bad. One of the exceptions taken at the trial was, that if parol proof of consideration were allowable, the defendant in error had offered *no evidence* of consideration for the plaintiffs' promise. But it is not competent for the defendant in error to establish a consideration for the promise of the plaintiffs in error by parol, for the reasons given in the opening argument. If the payment of the $463,31, as a consideration for the plaintiffs' promise was proved, as set forth in any one of the special counts of the declaration, such proof would contradict or essentially vary the terms of the paper produced. This paper states the liability of L. Morgan & Sons, and their desire *in respect of such liability* to indemnify Kneeland, and therefore requests the plaintiffs in error to pay, &c. Would it be consistent with the import of this writing to say, L. Morgan & Sons having received from Kneeland $463,31, a balance in his hands due them and upon which he had a lien for indemnity, therefore we promise to pay, &c. ? In the one case the moving consideration is the original liability of L. Morgan & Sons, in

the other a new pecuniary consideration moving from Knee-land to the Messrs. Rogers. The learned counsel further contends, on the authority of *De Wolf* v. *Rabaud et al.*, 1 *Peters*, that the consideration can be established by parol. That case was decided, as the court will see, expressly on the authority of *Leonard* v. *Vredenburgh* and *Bailey* v. *Bogert*, 11 *Johns. R.* 221. Among other grounds of defence, it was insisted that the statute of frauds required the consideration of *James De Wolf's* promise to appear on the face of the instrument, and that it did not so appear. The plaintiff below contended that the consideration could be supplied by parol proof. Judge Thompson, whose opinion was afterwards confirmed by the court, decided that it could, if the jury should *find that the undertaking of the defendant was entered into at the same time with that between Belknap and George De Wolf, so as to form one entire transaction.* But the judge assumed *that the parol evidence offered did not in any manner contradict the written agreement, but was perfectly consistent with it. See pages* 486, 487. Let us suppose that the order from George De Wolf to James De Wolf had run thus : " *I having become obligated to send to Messrs. Rabaud, Brothers & Co., and desirous of fulfilling my obligation,* you will please ship," &c.—would his honor have said that the parol proof offered was perfectly consistent with the written agreement ? It is believed he would not, but would have declared it, in language employed in another part of his opinion, " a collateral undertaking, made *subsequent* to the principal contract, and requiring some other consideration to support it than that which supported the principal contract." If then the court should be of opinion that the fact assumed by Judge Thompson could not be predicated of this case, the analogy between the two cases entirely fails. But further, in that case the jury found that there was an agreement between *all the parties,* and that it was an *entire* transaction. Was any such thing shown in this case ? Did the jury find, or was it left to them to find, that the plaintiffs and defendant in error and L. Morgan & Sons mutually agreed that if the latter received from the defendant in error $463,31 in his hands, then the plaintiffs in error would indemnify him against the suit pending against him, and that *the writing now*

*in controversy was drawn in pursuance of such an agreement?* There is no evidence that the plaintiffs in error were influenced to sign the paper by any other inducement than such as appears on the face of it, to wit, the liability of L. Morgan & Sons, and their, L. Morgan & Sons', desire to indemnify Kneeland. But there is another important particular, in which the principle decided or confirmed in the case in *Peters* has no applicability to the present. L. Morgan & Sons' liability to pay these damages and costs did not, as before observed, originate with the writing, but the writing itself acknowledges its *previous existence;* therefore, the undertaking of the plaintiffs in error was not an original collateral undertaking, for it is essential to such an undertaking that the liability of the principal debtor (in this case L. Morgan & Sons) should have originated when the collateral promise was made; for the *consideration* for the *main promise* must support the collateral one also. Now, the Morgans' liability to pay cannot be founded on their receipt of the $463,31, because their liability to pay was antecedent to the signing of the paper; it grew out of the fact that the cotton was theirs, and had been sold on their account, and all this appears on the face of the paper itself. But the learned counsel insists that Morgan & Sons are under a *moral obligation* to indemnify the defendant in error, and that obligation constituted a sufficient consideration for the express promise contained in the guaranty, and he cites an authority to prove this proposition. I am ready to admit that it appears upon the *face* of the guaranty that L. Morgan & Sons are under a moral obligation to pay Kneeland all costs and damages he might expend in the suit mentioned therein, because they there acknowledge their legal liability; but if my learned opponent means that they were under a moral obligation to *furnish security* for such payment, I am at a loss to understand him; still more am I at a loss to perceive how their moral obligation can form a consideration for my clients' promise.

One of the grounds upon which the court below placed their decision was, "that the contract of L. Morgan & Sons, and the guaranty of the Messrs. Rogers was an entire contract entered into at the same time, and that the payment over of the

money in Kneeland's hands, on the faith of the guaranty, was a good consideration to support the Messrs. Rogers' agreement. It was an *original* as well as a *collateral* agreement, and was therefore not within the statute of frauds." It only remains for me to make one remark on that part of the opinion of the court contained in the last sentence of the preceding extract. If the promise were collateral, no matter though it were original, it was within the statute of frauds; all that Kneeland did after the date of the guaranty was done for the benefit of L. Morgan & Sons, who were of course the principal debtors of Kneeland, and if *any credit at all* were given to L. Morgan & Sons, the promise of the plaintiffs in error was collateral, and required to be in writing by the statute of frauds. *Matsom* v. *Wharam et al.* 2 *T. R.* 80.   *Chase* v. *Day*, 17 *Johns. R.* 115, *note a.*   3 *Kent's Comm.* 87.

*By the Court*, NELSON, J.   The first question presented in this case, viz. whether the evidence offered by the defendants below, that the plaintiff below had acted without authority and contrary to instructions in selling the cotton by sample, was admissible, depends upon the relations and transactions existing between the principals and their agent, and their respective rights and duties growing out of them, in which the defendants are not particularly interested, because there can be no doubt that the *Morgans*, the principals, are bound to keep the defendants harmless.   It is said the *Morgans* are bankrupts, but their inability to reimburse cannot vary the legal rights of the parties; the defendants chose to risk their responsibility, and it is not for them to set up their misfortunes in this respect to influence the just right or claims of third persons.   Under the circumstances of this case, then, would it have been competent or tolerated in the Morgans to have interposed, as a defence to an action directly against them, that the agent had exceeded his instructions in selling their cotton by sample, and that the recovery against him by the purchaser was the consequence of his own fault?   They not only received the proceeds of the sale, which was no doubt enhanced considerably by the warranty, but after the suit against Kneeland was commenced, and as is fairly to be

inferred, both from their letter to the defendants and from the record of judgment in that suit, *after the declaration was served* disclosing the grounds upon which damages were claimed, they honestly acknowledged their liability, and take, as they suppose, effectual measures to indemnify him. They say, "The sale having been made for our account, we are of course liable for any damages that may be recovered in the suit; and being desirous of providing a full indemnity, &c. we hereby authorize and request you to pay him all such sums of money as he may be required to pay, as well for damages that may happen to be recovered against *him* in the suit above mentioned, or otherwise, in relation to the cotton," &c. The acknowledgment of their liability to keep the agent harmless was unconditional, and the engagement with the defendants to indemnify him absolute, and all this after the means were in their power to ascertain the grounds upon which the damages were claimed against him. Even if it had been proved on the trial that the sale by sample was without authority, we could not for a moment have doubted but that the subsequent transactions between the parties were decisive to establish the approbation and ratification of it. The only pretence urged against this conclusion is, that the principals may not have known that the agent had sold by *sample* when they acknowledged their liability to indemnify him. The answer to this is, that they had within their power ample means of ascertaining the facts, not only from their agent, but from the adverse party, whose attorney resided in the city where this acknowledgment was made and indemnity given; and if we are at liberty to presume ordinary attention on their part to their own interests, we are bound to believe that the arrangement to save the agent harmless was made with a full knowledge of all the facts. If they had not authorized the sale by sample, and intended only to be responsible to the agent for liabilities incurred while acting strictly within the scope of his powers, they should have so qualified their engagement. There can be no doubt, if the defendants had paid the judgment against Kneeland, and the costs of the defence of the suit against him, the Morgans would have

NEW-YORK,
May, 1833.

Rogers
v.
Kneeland.

NEW-YORK, been immediately accountable to them. The defendants are
May, 1833. volunteering a defence for the Morgans which, as may justly
be inferred from their letter, would be disclaimed by them-
Rogers selves. If the guaranty had been obtained through false rep-
v. resentations of the terms and character of the sale of the cot-
Kneeland. ton to Andrews, the question would have been different ; but
it is conceded that the guaranty was demanded as a right by
the plaintiff, after the suit was brought against him, freely
given by the Morgans, and fairly obtained ; and it is not for
them now, under the circumstances, after the liability is in-
curred, to qualify it ; much less can the defendants do so.

The next and probably the material question intended to be
presented is, whether the written guaranty is sufficient to
take the case out of the statute of frauds. The construction
of that statute by the court in *Wain* v. *Warlters*, 5 *East*, 10,
was adopted by this court in *Sears* v. *Brinks*, 3 *Johns. R.* 210,
and has been followed in all subsequent cases, 8 *Johns. R.* 29,
11 *id.* 221, 13 *id.* 175 ; and it requires not only that the prom-
ise should be in writing, but that there be a consideration al-
so in writing to take the case out of the fourth section of the
statute. It is said in this case that there is no consideration for
the promise of the defendants, or at all events, none appearing
upon the face of the instrument. A consideration implied or in-
ferred from the terms of the instrument is as effectual as if ex-
pressly appearing on its face. 19 *Com. L. R.* 55, 272. 7 *id.* 414.
1 *Peters*, 501. It is a general principle, applicable to all instru-
ments or agreements, that whatever may be fairly implied from
the terms or language of an instrument is in judgment of law
contained in it. The letter of the *Morgans* and the guaranty
of the defendants must be taken together as constituting the
whole of the written agreement entered into with the plain-
tiff; the latter refers to and adopts the former as containing
the stipulations for the benefit of Kneeland, with which the
defendants say they will "promptly comply." The Morgans
being the only parties in interest in defence of the suit against
Kneeland, their agent, and of course legally liable to keep him
harmless against any expense or damages recovered, this ori-
ginal legal liability would constitute a good consideration to
support any express promise or engagement by them for that

NEW-YORK,
May, 1833.
Rogers
v.
Kneeland.

purpose ; but I admit, with the counsel of the plaintiffs in error, that this existing liability would not constitute a sufficient consideration to support the promise of the defendants, if there was nothing else in the case. That view of the case, however, is not warranted by the facts and circumstances. Though the Morgans were under obligations to indemnify the plaintiff, was he bound to trust to their sole responsibility for the expenses in defending the suit *to be thereafter* incurred, and the hazard of a recovery against him ? I think not. After they were advised of the existence of the suit, and acknowledged themselves bound to defend it, in judgment of law all the trouble and expense of such defence devolved immediately upon them. If the plaintiff consented to assume this upon himself in the first instance, he had a right to fix his terms. It is true, he had an interest in the defence, because he would be primarily liable to the plaintiff, and must trust to the ability of the Morgans for reimbursement ; and if they had denied their liability, and stood upon their strict legal rights, the plaintiff might have been under the necessity of defending the suit in the first instance at his own expense, to enable him to resort back to his principals ; but they acknowledged their liability, and that the defence was a business of their own and for their exclusive benefit. Under these circumstances, the charge of it, with the consequent trouble and expense and payment of the judgment recovered, constituted a sufficient consideration to give effect to the promise of the defendants. It was a service performed and money advanced upon their credit, as well as upon that of the Morgans, and for the benefit of the latter. It is not the consideration, arising from their original obligation to save the plaintiff harmless, that is relied upon to sustain the defendants' promise—that, I admit, would be insufficient, because it is in no way connected with it, and existed before it was made—but it was care bestowed and money advanced in and about the defence of the suit, and the payment of the judgment finally recovered, (for performing all which the plaintiff had a right to ask security, and for which expressly the guaranty in question was given) that create a legal and valuable consideration within all the cases on the subject. It is said in the argument of the counsel for the

NEW-YORK,
May, 1833.

Rogers
v.
Kneeland.

plaintiffs in error that the liability of the plaintiff to defend the suit had been already incurred when the guaranty was given. That fact no .where appears in the case. It does not appear, except by inference, that he had even retained an attorney. If he had been already subjected to a portion of the expenses, or had advanced them, it would not impair the force of the argument or affect the result. The subsequent liabilities and advances would still have been a .sufficient consideration to maintain the promise to its full extent. 7 *Com. Law Rep.* 414.

Does the consideration appear upon the face of the instrument ? Since the decisions in the cases of *Saunders* v. *Wakefield* 6 *Com. L. R.* 531, *in the K. B.*, and *Jenkins* v. *Reynolds*, 7 *id.* 328, *in C. B.*, the case of *Wain* v. *Warlters* has been acknowledged in England, without stint or qualification, as giving the true construction to the 4th section of the statute, which requires the consideration as well as the promise to be in writing. Whatever may be the character of some of the cases decided there prior to this time, and I admit the difficulty in reconciling some of them with the leading cases, since those decisions which acknowledge to the fullest extent the doctrine of that case, we may refer with safety to the cases in those courts for applications of the rule. They frequently occur, and the books of reports are full of them. I will refer to two or three cases. In *Rider* v. *Curtis*, 16 *Com. L. R.* 335, the guaranty was as follows : " I do hereby agree to become security for Mr. R. G., now your traveller, in the sum of £500, for all the money he may receive on your account." The consideration averred in the declaration was the continuance of the traveller in the employ of the plaintiff; and the whole court were clear that it sufficiently appeared upon the face of the instrument. In *Newbury* v. *Armstrong*, 20 *Com. L. R.* 272, the guaranty was in these words : " To J. N.—Sir : I, the undersigned, do hereby agree to bind myself to be security to you for I. C., late in the employ of I. P., for whatever you may entrust him with while in your employ, to the amount of £50, and in case of any default, to make the same good." It was objected that the consideration did not appear upon the face of the instrument. The chief justice on the trial said :

"If by fair inference we can find it, that will be sufficient ;" and gave the plaintiff a verdict. The case was afterwards moved at bar, *p. 55*, and the decision confirmed by the court, upon the ground taken at the trial, viz. that it was fairly to be inferred the consideration was the taking of J. C. into the plaintiff's employ. There are numerous cases to this effect. The case of *Stadt* v. *Lill*, 1 *Campbell*, 242, was as follows : " I guarantee the payment of any goods which Mr. I. Stadt shall deliver to Mr. Nichols of Bricklane." Lord Ellenborough, at the trial, ruled that the consideration appeared upon the face of the instrument, which was confirmed at bar. 9 *East*, 348. That the thing (the delivery of the goods,) to be done by the plaintiff, which was the foundation of the defendant's promise, appeared in the instrument, and that the delivery of the goods constituted a sufficient consideration, though no cross action lay for them ; the delivery consummated the agreement. The principal of these cases is decisive of the point now under consideration. It is not necessary to resort to inference, or in the language of one of the judges, " to spell out the consideration" from the instrument, for it expressly appears in the letter of the 5th of August, which constitutes a part of the guaranty ; and the performance of the consideration when executory, must from necessity be proved by parol, and may be so proved within all the cases.

It is objected that all the counts in the declaration set out a different consideration for the defendant's promise from the one here relied on, to wit, *the defence of the suit*, &c. This is a mistake. The 7th count places the plaintiff's right of action against the defendants upon this ground alone. The third and fifth counts would, I think, also sustain this view of the case ; it is one of the considerations relied on to support the promise, although the payment of the $463,31 is also stated ; but where two considerations are counted on, the one good and the other void, it is sufficient to prove the valid one, and whether the other is proved or not is immaterial. 1 *Chitty*, 296. Here, if both are good, they have been proved ; and if one is inoperative, it will not vitiate the other. I have not deemed it important to examine the case with reference to the consideration of the $463,31 alleged to have been paid

NEW-YORK, the defendants by the plaintiff, being entirely satisfied. the ac-
May, 1833. tion can be sustained on sound and settled principles, upon the view already taken. There would be difficulties, I think, in the way of maintaining it upon any other ground. No doubt, if the $463,31 had been paid to the defendants as the consideration for their engagement to indemnify, no note or memorandum would have been necessary, as it would then not have been a case within the statute. 8 *Johns. R.* 39.