Loomis *agt.* Monroe.

Loomis, plaintiff in error, *agt.* Monroe, defendant in error.

### Questions Discussed.

1. Whether a written undertaking or agreement (mentioned in the case) was *original* or *collateral?*

2. Whether the agreement did not come within the statute of frauds, for want of consideration?

3. Whether plaintiff could recover under the common counts? The contract being alleged to be special and collateral.

This was an action of assumpsit, brought by Loomis against Monroe, and tried before Hon. Daniel Mosely, circuit judge, on the 9th April 1844.

The declaration was on the money counts—for work, labor and services, and for goods, wares and merchandise and materials found. Plea non assumpsit. On the trial, the plaintiff read in evidence, a written instrument, the due execution of which was admitted, as follows:

" I bind myself that in the event of the company not paying Mr. Loomis, under the agreement signed by him on the 17th March 1834, in relation to the construction of the Arcade, in front of his house, that I will, in my individual capacity, pay him the sum specified in the agreement, when the Arcade shall be built under the agreement. Sum to be paid by the agreement, six hundred dollars. Ballston Springs, March 17, 1834.

Thomas Palmer.                    JAMES MONROE."

The plaintiff also read in evidence another written instrument, the due execution of which was admitted, as follows:

" I have agreed with the committee on the Saratoga Rail Road Company to sign off all claims sustained by me in the construction of the said road. This includes all lands in which I am interested, through which the road now passes. In short, I will make no claim on the directors of the rail road, after they have paid the sum of six hundred dollars for the erection of an Arcade in front of my house, known as the Sans-Souci Hotel, at which place the cars of the rail road shall be obliged to stop for the convenience of passengers going to and from Ballston Springs.

Loomis *agt.* Monroe.

I will superintend the construction of the Arcade; and the sum of five hundred dollars at least, shall be expended. The Arcade to be at least seventy feet long, and as wide as the one now at Saratoga Springs. I sign this as a memorandum of what I offer to do with the company, if it shall be confirmed by the company.

HARVEY LOOMIS.

Witness, THOMAS PALMER, March 17, 1834."

*Thomas Palmer,* a witness for plaintiff, proved the execution of the instruments; was present with Loomis and Monroe. Monroe asked Loomis, why he had not built the Arcade? Loomis said he was willing to do so, but must have some responsible person to assure him he would get the money. Monroe asked if Loomis would take him? Loomis said yes. Then they went to the Mansion House, and there the writings were executed. The Arcade was 70 feet long, and larger than the other; and witness thought as wide as the one at Saratoga Springs. *Cross-examined:* Monroe wanted to have the Arcade built, and witness supposed Mr. Loomis did also, as it was near the Sans-Souci. Witness was one of the executive committee. The Arcade was over land which had been conveyed by Loomis to the company. Loomis owned the Sans-Souci, and opened a way to the Arcade. Monroe owned no land there. The company wanted the Arcade built to keep their coaches under, though they used it but little for that purpose. Monroe was president of the company, one of the executive committee and a stockholder.

*Joseph W. Loomis,* a witness for, and son of the plaintiff, testified that the Arcade was built and finished in the latter part of May or June 1834; was 70 feet long and 34 feet wide. Was larger than the one at Saratoga. Saw Monroe in June 1837, in New York, after the trial at the Saratoga circuit. Presented Monroe the contract and told him it had been sent to witness to receive payment. Monroe said he was busy; witness said his directions were to prosecute. Witness told him his father had been beaten. Monroe said he had heard of the result of the suit, and said he expected to pay. He said he should see witness's father at Ballston that summer; he said there was no need of being in haste, and in the mean time he would try to get part of it out of the

Rail Road Company, and when he came to Ballston would pay his father. Witness was *cross-examined*, as to the size of the Arcade at Saratoga Springs. This was all the testimony introduced.

Defendant's counsel moved for a nonsuit, on the ground:

1st. Because it does not appear from the evidence in the cause, that there was any good and sufficient consideration for the defendant's promise.

2d. That the written undertaking of the defendant was void, for want of consideration, and for not containing any expression of a consideration.

3d. That the plaintiff, to entitle himself to recover, must show that the Rail Road Company accepted the proposition made in his writing; or had agreed with him in respect to the erection of the Arcade.

4th. That the proof in the cause was not sufficient to entitle the plaintiff to recover under the common counts.

The circuit judge nonsuited the plaintiff; to which decision the counsel for the plaintiff duly excepted.

The Supreme Court, in October term 1845, affirmed the verdict at the circuit, with the following

*Opinion*—BEARDSLEY, Justice.—On the 17th March 1834, the plaintiff executed a writing, by which he proposed to the Saratoga Rail Road Company, and on his part agreed to sign off and relinquish all claim for damages sustained by him in the construction of the rail road of said company through and across his land, provided the company would pay for the construction of an Arcade at Ballston, in front of a hotel owned by the plaintiff, and would stop their cars at that place for the convenience of passengers going to and from Ballston Spa. By this writing, the plaintiff offered to superintend the construction of the Arcade; and it was declared that $500, at least, should be expended upon it. All this was strictly in the form of an offer, or proposition on the part of the plaintiff. The writing says: " I sign this as a memorandum of what I offer to do with the company, if it shall be confirmed by the company." When this proposition was signed by the plaintiff, the defendant, who was then a stockholder, and president of the company, executed a separate writing on

his part.   By this the defendant engaged that when the Arcade should be built, under the agreement of the plaintiff (which has been stated), if the company should fail to make payment, according to that agreement, he, the defendant, would, individually, pay the plaintiff therefor.

It is not shown that the company ever accepted the proposition of the plaintiff, or in any form adopted or acted upon it.   The plaintiff, however, went on and erected an Arcade; and this suit is brought against the defendant to recover payment for that work.

It was proved on the trial, that after the Arcade had been erected, the defendant was called upon for payment—when he stated that he expected to pay, and promised to do so.

The defendant was not legally bound by this promise, unless the Arcade had been built at his request; aside from this, his promise was without consideration.   There is nothing from which a request can be implied; and the only evidence of an express request which the case discloses, is found in the written engagement of the defendant, which has been mentioned.

That can not be regarded as an original employment of the plaintiff to erect an Arcade, and an absolute engagement to pay him for doing it.   It was intended to be a collateral, and not an original undertaking.   In its terms the engagement is contingent. The plaintiff proposed to the Rail Road Company, that they should erect an Arcade; but this was not binding upon either party until accepted and agreed to by the company.

The substance of the defendant's engagement was, that if the company should accede to the plaintiff's proposal, and should fail to make payment for the Arcade, when erected, under such agreement, he would personally pay the plaintiff for it.   But until the company accepted the offer, as made, and became bound to pay for the Arcade, the defendant was under no liability whatever to the plaintiff.

The contingency, on which the defendant was to become liable, was, that the company should first engage to pay for the Arcade; and in that event, if they failed to pay, the defendant's engagement would become absolute.   As it was not shown that the

Loomis *agt.* Monroe.

company at any time, adopted the proposition of the plaintiff, the defendant was never bound.

*B. Davis Noxon,* for plaintiff in error.

*First.* The written undertaking of the defendant may be thus stated: If Mr. Loomis will go on and build the Arcade in front of his house, in pursuance of his proposal to the committee of the Saratoga Rail Road Company, dated March 17, 1834, I will pay him therefor the sum of $600, if the said company shall not pay. him. The plaintiff *did* build the Arcade according to the pro-poposal, and the company have *not* paid him. This was an original undertaking on the part of the defendant, and in no respect collateral. The Rail Road Company never having accepted the plaintiff's proposal, were not liable to him. The defendant's agreement was not to answer for, or pay, the debt of a third person—no such debt existed. The plaintiff built the Arcade upon the defendant's employment and promise; and is entitled to recover under the common counts set forth in his declaration (*Cow. Tr.* 3d ed. 57, 58, 59; *Miller* v. *Drake,* 1 *Caines' R.* 45; *Com. on Contracts,* 4th *Am.* ed. 15, 16, 17, 18, and cases cited there; *Allaire* v. *Auland,* 2 *Johns. Cases,* 52; *Austin* v. *McClure,* 4 *Dall.* 226; *Chitty on Contracts,* 5th *Am.* ed. 505, 506, 507, &c.; *Story on Contracts,* 115, 116, 117.)

*Second.* The case is not within the statute of frauds (*Chitty on Contracts,* 499). No writing was necessary; but if otherwise, a sufficient consideration is expressed in the writing. The credit was given to the defendant, and the work to be done by the plaintiff was consideration enough for the promise (*Chitty on Contracts,* 29; 1 *Caines' R.* 45; *Powell* v. *Brown,* 3 *John. Rep.* 100; *Seaman* v. *Seaman,* 12 *Wend.* 381; 6 *Mass. R.* 58).

*Third.* It was not necessary for the plaintiff to show that the Rail Road Company had accepted his proposition; this was no part of the contract. If the company had acceded to the proposal, no promise from the defendant would have been required. The court has no right to make a contract for the parties different from the one they intended to make, and different from that both understood they had made. The testimony of Palmer shows what

Loomis *agt.* Monroe.

contract they intended to make. The contract itself shows the agreement actually made by the defendant; and the testimony of Joseph W. Loomis shows what both parties understood the contract to be.

*Fourth.* After the work was done, by the request, and upon the employment of the defendant, he distinctly undertook and promised to pay for it the stipulated price of $600. The count upon an *insimul computassent* is applicable to and covers the case under this branch of the proof; and upon every principle of morality and law the plaintiff is entitled to recover (*Cowp. Rep.* 290; *Hawkins* v. *Saunders*, 13 *John. R.* 380; *Coventry* v. *Barton*, 17 *John. R.* 142).

*N. Hill Jr.*, for defendant in error.

*First.* The fair import and effect of Monroe's promise is, that he was only to be bound in case Loomis's proposition or " offer" to the Rail Road Company was accepted, and they failed to pay.

The promise of Monroe, and the " offer" of Loomis, were made at the same time, and should be construed in reference to each other, as one instrument.

Both parties knew that the Arcade could not be built without an agreement with the company; as it was to be built, if at all, on the land of the company (*Case, p.* 9).

What is fairly implied by the terms of a writing is in judgment of law contained in it (10 *Wend.* 250; 5 *Hill*, 147).

*Second.* The only consideration expressed or implied in the promise of Monroe, is the building of the Arcade by Loomis, at a future day, *for* the company, under an *agreement with them.* If this is not the consideration, then the agreement, being collateral, is void by the statute of frauds.

*Third* It is manifest, from the whole scope of the writings executed by the parties, that the intention was to bind Monroe as *surety* for the company. And it is of the essence of all such contracts that there must be a principal debtor; and the party agreeing to become responsible for him incurs no obligation as surety, if no valid claim against the principal ever arises (*Chitty on Contracts*, 499, *Am. ed. of* 1842).

Loomis *agt.* Monroe.

*Fourth.* Loomis could not recover under the common counts, the promise on which he relied being collateral, viz: to pay the $600 in case the company failed to do so.

The promise is in terms to pay *in the event* the Rail Road Company failed to do so; and every such promise is collateral (2 *Cowper*, 227, 229; 2 *Vermont R.* 453).

The plaintiff must always declare specially where he seeks to charge the defendant upon such a collateral undertaking (2 *Hill*, 589; 5 *id.* 615; 1 *id.* 82, 86). ·

The common counts are inappropriate where the case is such, that in order to connect the parties in privity with each other, a special contract must be proved (1 *Saund. Pl. and Ev.* 137; 7 *Johns. R.* 132, 133–4; 11 *Wend.* 664–5).

The contract in this case was highly special in its character, and Lmis wooas bound to prove, 1st. That the Rail Road Company accepted his proposition; 2d. That he had performed what the terms of it required; and 3d. That the company had failed to perform on their part.

## Judgment affirmed, unanimously.

NOTE.—Where L. agreed (in writing) to sign off and relinquish all claim for damages sustained by him in the construction of a rail road through and across his land, provided the Rail Road Company would pay ($600) for the construction of an Arcade in front of a hotel owned by L., and would stop their cars at that place for the convenience of passengers—and L. offered to super-intend the construction of the Arcade; and that $500, at least, should be ex-pended upon it—stating: "I sign this as a memorandum of what I offer to do with the company, if it shall be confirmed by the company"—and M., who was a stockholder and president of the company, executed a separate writing on his part, by which he engaged that,when the Arcade should be built, under the agreement of L., if the company should fail to make payment according to that agreement, he (M.) would, individually, pay L. therefor—*Held*, that the undertaking of M. was *collateral*, not original. In the absence of proof that the *Rail Road Company* had ever accepted or acted upon the proposition of L., although L. erected the Arcade, and then called upon M. for payment under his agreement, and M. said he expected to pay, and promised to do so; *held*, that the promise of M. was without consideration. There was nothing from which a request by M. to build the Arcade could be implied; and as the terms of his agreement was contingent and collateral, and the contingency not having happened, he was not legally bound.