[JUNE TERM, 1853.

~~~~

Hutchinson
et al.,
vs.
Lord.

----

CHAMPION J. HUTCHINSON, JULIUS WHITE, ASA-
HEL FINCH and WILLIAM P. LYNDE,
*Plaintiffs in Error*,

*vs.*

GEORGE P. LORD, *Defendant in Error.*

ERROR TO THE CIRCUIT COURT FOR MILWAUKEE COUNTY.

As a general rule, in trespass *de bonis asportatis*, the possession of the plaintiff is sufficient to enable him to maintain his suit, in this respect; but where a paramount title is shown to be in a third person, and the defendant connects himself properly with such third person, the rule is otherwise.

Wall executed an assignment to Lord, of certain goods, &c., for the benefit of creditors named in schedules, referred to in and annexed to the instrument, which was accepted by Lord, C. H. & Co., were set down in one of the schedules as creditors of Wall. Held, that in a suit in trespass by Lord against the marshal, for levying on such goods, by virtue of a writ of attachment against Wall, at the suit of C. H. & Co., Lord was estopped from denying that they were creditors of Wall.

A trustee, or assignee for the benefit of creditors, is bound to manage and employ the trust property, for the benefit of the cestui que trusts, with the care and diligence of a provident owner.

A reservation or restriction of the liability of the assignee, to a degree less than that which the law imposes upon trustees, renders the assignment fraudulent and void as against creditors.

A provsiion in an assignment, that the assignee, "while acting in good faith shall not be made or held personally liable in the premises, in any manner, is such a restriction upon the liability of the assignee, as renders the assignment fraudulent and void as against creditors.

Every provision in an assignment which exempts the assignee from any lia-

JUNE TERM, 1853.

Hutchinson et al., vs. Lord.

bility, that he would by law be subject to as assignee, is of itself a badge of fraud.

An assignment which authorizes the assignee to sell the trust property on credit, is fraudulent and void as against creditors, it being to hinder and delay creditors, unless the creditors become parties to the assignment.

Where the assignment empowered the assignee "to sell and dispose of the goods, &c. in such manner, either at public or private sale, and upon such terms, and for such prices as to him shall seem advisable:" Held that this was an authority to sell on credit, and necessarily would operate to hinder and delay creditors, and rendered the assignment fraudulent and void.

When these facts (above stated) appear upon the face of the assignment, it is the duty of the court to instruct the jury in relation to the conclusions of law arising from them, and it is error to refuse such instructions. They constitute of themselves evidence upon the question of intent, and their legal effect ought to be submitted to the jury by the court.

This was an action of trespass *de bonis asportatis,* tried at the February term, A. D. 1852, of the Milwaukee Circuit Court. Plea, the general issue, with notice, justifying the taking of the goods as the property of Caleb Wall, by virtue of a writ of attachment issued out of the District Court of the United States for the District of Wisconsin, against the goods and chattels, &c., of the said Wall.

On the trial, Owen Aldrich was called as a witness on the part of the plaintiff below, who testified that goods of the value of about $3,000, in a store in Milwaukee, formerly occupied by Wall, were attached. The plaintiff's counsel then asked the witness to state all he knew of the taking, to which the defendants objected; but the court ruled that it was competent to show the manner of entering the store, for the purpose of showing the wilfulness of the trespass charged, to which the defendants excepted. The witness answered that the entry was made through the window of the store, and the goods were taken by virtue of an attachment from the District Court of the United States against Wall. Five or six persons, and two or

JUNE TERM, 1853.

Hutchinson
et al.,
vs.
Lord.

three of Wall's clerks were in the store. Lord said the goods belonged to him. The witness kept the goods in the store until the next day ; an inventory of the goods was made by the appraisers. Julius White, (one of the defendants, deputy marshal,) and myself only went into the store. The doors of the store were all locked, even the back doors. Plaintiff's counsel then asked the witness whether anything was broken, in entering the store, and, if so, what was it ? and how was it broken? To this the defendants objected, but the objection was overruled, and exception taken. Witness answered that he broke a pane of glass in getting in himself after White was in ; that he could just reach the window, and, in getting in, he broke the square of glass. Witness was either a general or special deputy of the marshal for the District of Wisconsin, and that he took the goods by an attachment against Wall.

The value of the goods was proved to be, according to the appraisal, $2986,71. Lord notified the appraisers not to come on the premises.

E. S. Burr, on the part of the plaintiff, testified that, at the time of the entry of the store, by White and Aldrich, Lord was in posssssion ; had been for a day ; witness was then in Lord's employ ; did'nt know whether Wall's sign was down or not.

On his cross-examination, the witness stated that Lord was in possession, by virtue of an assignment, which he produced. He subscribed the memorandum endorsed on it, as a witness. The assignment was delivered about noon, and possession given to Lord. No inventory was made at the time the levy was made. Inventory was begun by Lord's directions, at two or three o'clock, P. M. The assignment was

delivered at its date. The levy was made the same
evening ; the inventory was being made at the time
of the levy.

The plaintiff further proved, that Hutchinson was marshal of the District of Wisconsin, and that White was his deputy.

The plaintiff then offered in evidence, a bond of indemnity, executed by the defendants, Finch & Lynde, conditioned " to keep indemnified and saved harmless, the said Hutchinson, his heirs, executors and administrators, from all damage and costs that may be occasioned to him, by reason of the service of an attachment upon certain goods in the store occupied by Caleb Wall, in the city of Milwaukee, issued," &c., "in which Henry M. Holbrook, Joseph R. Carter and John F. Holbrook, are plaintiffs, and Caleb Wall, is defendant," &c.; to the reading of which the defendants objected, for the reason, that its condition being for indemnity for taking of goods in the possession of Wall, it would not extend to the taking of goods in the possession of another. The objection was overruled, and exception taken, and the bond read in evidence ; when the plaintiff rested.

The defendants then called B. K. Miller, clerk of the U. S. District Court for the district of Wisconsin, who produced the record of a judgment in said court, in favor of Carter, Holbrook & Co., against Caleb Wall ; also a writ of attachment in the same proceeding, and the affidavit on which the same was issued. The defendants offered to read in evidence the record of such judgment ; when the plaintiff's counsel inquired of the witness, whether Finch, one of the defendants, was not a witness on the trial or inquest on which such judgment was had. The witness answered

June Term, 1853.

Hutchinson et al., vs. Lord.

that he was not certain, and the plaintiff called E. G. Ryan as a witness, who, being sworn, said he was present at the trial of Holbrook, Carter & Co. against Caleb Wall. The plaintiff then proposed to show by this witness that the defendant Finch was a witness on the said trial. To all of which the defendants objected, but the court overruled the objection, and the defendants excepted. The witness answered that Finch was a witness on the said trial. The defendants then offered the said record, as evidence of the existence of a debt at the commencement of the suit of which it was a record; but the court rejected the evidence for such purpose, and the defendants excepted.

The record was then offered, as to White, Lynde and Hutchinson, and was received by the court as to White and Hutchinson, and rejected as to Lynde.

The defendants then offered the writ of attachment, to which the plaintiff objected:

1st. Because "the issuing of a writ is a ministerial act, and the writ alone, without a judgment, protects no one."

2d. Because "the writ, on its face, shows a direction to levy on the goods of Wall."

3d. Because the proof shows the goods were in the possession of Lord.

4th. Because the court had no jurisdiction of the process.

Subjecting the proof to the third and fourth objection, the writ was admitted; to which ruling of the court the defendants excepted.

The defendants then offered to read the writ in evidence, in behalf of the defendants, except Finch, to which objection was made by the counsel for the plaintiff, exception taken, and subject to the above

third and fourth objections, it was received in behalf
of the defendants, except Finch and Lynde.

The defendants called Caleb Wall, who, after examination upon his *voir dire*, testified in chief, that he thought he delivered the assignment at four o'clock P. M., June 2d. " I was in the store afterwards, that evening, and for one or two days afterwards. We went to the back part of the store, and I said to Lord, I make this assignment on the condition that I retain $1,200 to $1,500 of bills of exchange, and delivered to him the assignment with that understanding. At this time, I had not delivered the assignment, but held it executed in my hand ; I would not have delivered it, but for Lord's promises that I might take the bills of exchange. The bills were $1,000 to $1,200. Lord consented that I should retain these. When Lord came on, I intended to go to Finch; Lord inquired, 'who has got the claim of Holbrook & Co.?' I answered, Finch ; Lord said, don't go there, when I went up to Ogden's office ; I think Lord said something about keeping it a secret from Finch ; that if Finch knew of the assignment, he would attach. I told Lord that Holbrook & Co. had undertaken to attach at Buffalo, and if I could keep them out of their debt, and pay all my other creditors, I would be satisfied." [Here was produced an assignment of a lease by Wall to Lord, with a memorandum underwritten, "to surrender said lease whenever $3,000 is paid to us in full, and re-convey to him (Wall) any mortgage he may transfer to us." Signed, Alfred Edwards & Co., April 11, 1849. Also, a receipt from same parties, acknowledging an assignment of a lease, having two years and two months to run from April 11, 1849, at the rent of $700 per annum ; and further acknowledg-

ing the receipt of a personal mortgage of said leased premises of $2,000, expiring June 10, 1851.] The witness then stated that he owed Alfred Edwards & Co. $2,400 to $3,000, and that he made no after purchases of them to the time of the assignment; that Lord was a partner in the firm of Alfred Edwards & Co. ; that he (Wall) owned a store in 1849, renting for $700 per annum, worth $2,000, building worth $800 or $900. It was leased for two or three years to run ; that witness had given a chattel mortgage on said building to Alfred Edwards & Co., for $2,000 ; which had not been passed back to him before the assignment, nor at any time since. They had the avails of the lease and possession of the building. Lord agreed that I should receive $600 or $800 per annum, if I would make the assignment, whether I was employed or not. I objected to making the assignment, because I would be out of employ. Ogden said, to employ me would vitiate the assignment. Lord said he would get me discharged of the preferred creditors ; he was their agent.

" Lord knew that Sweet owed me $1,000." [The plaintiff here raised an objection to all proof of the separate acts of the parties, to the assignment, subsequent to its execution, for any purpose of showing it fraudulent, and that the defendants should be confined to concerted action of both parties to it, for such purpose, which objection was sustained by the court, and defendants excepted.] "Lord collected Sweet's note, and sent me the goods for it, amounting to $974.

" The goods attached were worth about 25 per cent. less than I paid for them. I sold them as agent of the officer ; they brought from $1,600 to $1,700, all they were worth. The preferred debts were not due

at the time of the assignment, and Lord wanted it made
because the unpreferred would attach.

On cross-examination, the witness testified that the debts of the preferred creditors had been due, but had been extended. "Lord induced me to make the assignment, for the reason, among others, that the preferred creditors had favored me in granting an extension. I finally concluded to assign, and Ogden drew the assignment." Witness in the spring of 1849 owed A. Edwards & Co., $3,000, about. "He took assignment on condition that I was to retain drafts or money; think I made one or two remittances to preferred creditors and to A. Edwards & Co., but not certain. I was not indebted to A. Edwards & Co. in the amount in schedule annexed to the assignment."

The assignment referred to is in the following words:

This indenture made this twenty-eighth day of June, one thousand eight hundred and forty-nine, between Caleb Wall, of the city of Milwaukee, merchant, party of the first part, and George P. Lord, of the firm of Alfred Edwards & Company, of the City of New York, merchant, party of the second part, witnesseth, that the said party of the first part, in consideration of his indebtedness to the several persons mentioned in the schedules hereunto annexed, marked schedule A. and schedule B., and in the several sums set opposite their respective names, and of his indebtedness to the said Alfred Edwards & Company, and of the sum of one dollar to him in hand paid by the said party of the second part, hath granted, bargained, sold, assigned, transferred and set over, and by these presents doth grant, bargain, sell, assign, transfer and set over, unto the said party of the second part, and to his executors or administrators, all and sin-

JUNE TERM,
1853.

Hutchinson
et al,
vs.
Lord.

gular, the goods, wares and merchandize, stock in trade, furniture and fixtures of the said party of the first part, now in his store, number one hundred and fifty six, East Water street, in Dickerman's Block, in the city of Milwaukee, aforesaid, and the lease of the said store, or his interest therein, and also, all debts, accounts, notes, drafts, bills of exchange, claims and demands of every description and nature, due and owing, and belonging to the said party of the first part, and all books of accounts, and vouchers respecting the same, belonging to the said party of the first part, and relating and pertaining to his said store and business as a merchant, as aforesaid ; to have and to hold, &c., upon the following trusts, that is to say ; to take possession of the said assigned property, and to sell and dispose of the said assigned goods, wares and merchandize, *in such manner, either at public or private sale, and upon such terms, and for such prices, as to the said party of the second part shall seem advisable,* * * * * [providing for the payment in full of the creditors of the first class, and of the residue of the proceeds, if any, to pay, pro rata, the creditors of the second class, among whom was the firm of Carter, Holbrook & Co.] * * * *

*"And it is expressly declared, that the said party of the second part, while acting in good faith, shall not be made or held personably liable in the premises in any manner."*

" In witness whereof, &c.,

" Signed,      " CALEB WALL,      L. S.

" GEORGE P. LORD, L. S."

On which assignment were the following endorsements :

" On this 28th day of June, A. D. 1849, full posses-

June Term, 1853.

Hutchinson et al., vs. Lord.

sion given by the above named Caleb Wall to the above named George P. Lord, of the premises within bargained, sold and assigned, in presence of us.

<div style="text-align:center">"Signed     "E. S. BURR,<br>"BYRON L. CROSS."</div>

"We hereby accept the provisions made in the foregoing assignment for our benefit."

<div style="text-align:center">"Signed,    "ALFRED EDWARDS & CO."</div>

To which assignment were annexed schedules of the classes of creditors mentioned in the assignment, with the amount due each creditor.

The above copious synopsis of the evidence is deemed necessary to a proper appreciation of the points raised upon the trial, and brought in review in this court.

The evidence being closed, the court charged the jury; "That if Lord was in possession of the store and goods therein, at the time the officers entered the store, then the plaintiff's case was made out. On the part of the defendants, it may be regarded that they have shown that Lord derived his title to the goods, through the assignment given in evidence. This assignment defendants claim to be fraudulent, as against creditors, because of its provisions of preference. This, I cannot instruct you is so. It is further claimed, that the language of the assignment authorizes a sale of the property assigned, upon credit. This is not clearly, or necessarily so. If I had doubts as to this question, I should give the assignment such construction as would sustain the validity of the assignment, rather than defeat it, as fraud is not to be presumed, but proven. In this respect, then, I think the assignment legal. It is further claimed, that this assignment is fraudulent, because it provides for Alfred Edwards

JUNE TERM,
1853.

Hutchinson
et at.
vs.
Lord.

& Co., a greater debt than is owing to them. If that is proven to be so, and to have been designed, it would be a strong circumstance of fraud ; but I am not to tell you what the proof was, yet I understood Mr. Wall to testify, that he did owe A. Edwards & Co. the amount as provided, and that he made no payments unless through the lease and mortgage. It is true he said he might have remitted about $100, but was not certain of it. The lease and mortgage were delivered as security, and were not payment, and so far only as collections may have been made, of which there is no proof of any, before the making of the assignment, the avails of the chattel mortgage would apply to the benefit of creditors, and therefore cannot be considered as in payment. to Alfred Edwards & Co. The defendants further insist that the assignment is fraudulent in fact. Of this the jury must be satisfied by clear and satisfactory proof of the fact, that Wall and Lord entertained a fraudulent purpose and design to effect it by this assignment, acting in concert. It is not enough for such purpose that they, or either of them intended a preference to some creditors in the application of the goods, and thereby hindered and delayed others. If the debts provided for, were real, and no provision was made for Wall's benefit, the assignment would not be fraudulent as to Holbrook, Carter & Co., although the arrangement was kept secret from them, and they were not to be paid until after the preferred creditors. If, however, it was the design of both to cheat Holbrook & Co., or cover up the property and give Wall eventually the benefit of it, then it would be otherwise. It is insisted by the defence, that certain bills of exchange were passed by the assignment, but not in fact or in truth, but on the

June Term, 1853.

Hutchinson et al.. vs. Lord.

contrary that by the mutual understanding of the assignor and assignee, the bills were reserved for the benefit of the assignor. Upon this subject a variety of facts and circumstances were proved, or sought to be, in the conduct of Lord subsequent to the assignment, showing, or tending to show an original fraudulent design. So far as any acts of Lord and Wall jointly, or of Lord severally, after his possession of the goods, are fraudulent and disclose an original intent of both, they are competent evidence; but you should reject them if they fail to show a fraudulent intention at the time of executing the assignment, for the questions are—What did they do? and what did they intend? The rule of evidence applied to criminal cases has not its application in this case, but the burthen is with the defendants of making out the facts which show a fraud by clear and satisfactory legal proofs, such as should satisfy reasonable men. From what I have before stated, you will understand, that in the opinion of the court, the assignment is legal on its face. Whether it is so, from intent in fact, you should regard the position occupied by the witness Wall. His testimony forms the most important part of the testimony, and if there was fraud, he was a party to it.

The plaintiff requests that the testimony of this witness be wholly ruled out, because of his actual discharge from $15,000 to $17,000 of debts, and the fact that he put the assignment into existence, and has received great benefit from it. In the absence of legal decisions to such extent, I cannot say, as matter of law, that the evidence is inadmissible; but I do say, that the jury are bound to look at the position of the witness in connection with this assignment, and you are to judge, under all these circumstances, to what ex-

tent you will give him your belief: you may believe him fully and perfectly ; you may, in whole or in part, reject his evidence.

If you believe the assignment fraudulent, the question yet remains, whether the defendants did not so dispose of the goods as to render themselves trespassers *ab initio.* This question must be passed upon, and there is proof that Wall sold the goods levied upon for the defendants, and paid the proceeds to the marshal's deputy ; and the record of the judgment in favor of Holbrook & Co., having been rejected as any evidence of a debt due to them when the attachment issued, and Wall having testified that he had taken up the notes of Holbrook & Co. and given new judgment notes therefor some time in June, you will take his evidence, and decide whether it shows a debt due from Wall to Holbrook & Co. on the 28th of June, or not. If it proves such a debt, it then makes out that point of the defence; if not, then the defendants, Finch & Lynde, have failed of defence, and it being a material point, must lead to a verdict against them. If you find for the plaintiff, he will be entitled to your verdict for the value of the goods at the time of the levy, with interest, together with such sum as will cover his injury, including the trouble and inconvenience for the loss of his property, and his expenses in bringing suit."

The court also charged the jury that the writ and affidavit would protect the officers, but not Finch and Lynde, the other defendants. That Finch and Lynde were required to show a debt due, for which the attachment issued, and, as Finch was a witness in the proceedings to judgment, the record could not be admitted as evidence of such indebtedness as to them, and

as to them, you are to inquire otherwise for proof of such indebtedness.

The defendant then requested the court to charge the jury, as follows :

*First.* That if the jury find, from the evidence, that the property in question was taken by virtue of a writ of attachment against Caleb Wall, and the said Wall was justly indebted to the plaintiffs in the attachment, then, the plaintiff in this suit cannot recover, as the assignment, by virtue of which he claims title, is void as against attaching creditors.

*Second.* That the assignment of Wall to the plaintiff in this suit, and now in evidence, not being in conformity to the act relating to insolvent debtors, is void, as against attaching creditors ; therefore, if the jury find from the evidence, that the property in question was taken by virtue of a writ of attachment in favor of a creditor of Wall, then the plaintiff cannot recover.

*Third.* That if the jury find that the only evidence of the plaintiff's title to the goods in question, is the assignment of Wall to him, that then the clause in the assignment, that the assignee, " *while acting in good faith, shall not be made or held personally liable in the premises, in any manner,*" is a condition or reservation by the assignee, when he accepted the trust, against legal liability incident to trustees, and therefore renders the instrument absolutely void, and the plaintiff cannot recover.

*Fourth.* That the clause in said assignment, which provides that the assignee " may sell and dispose of the said goods, wares and merchandize, in such manner, either at public or private sale, and upon such terms, and for such prices as to the said party of the second part shall seem advisable," confers upon him the

power to sell the goods on credit, and therefore renders the instrument void, as being to hinder and delay creditors.

Which several instructions the court refused to give to the jury, and charged the contrary ; to which ruling the defendants excepted.

There were also a number of other instructions asked for by the defendants, and refused by the court, and exceptions taken ; but as they are not necessary to an understanding of the points passed upon in the judgment of this court, they are omitted.

It should have been before stated, that the defendants, Hutchinson and White, justified, by notice of the attachment, under the general issue, and that the defendants, Finch and Lynde, pleaded the general issue.

When the cause was about to be submitted to the jury, the counsel for the plaintiff directed a discontinuance as to Hutchinson and White, when leave was obtained by the other defendants to amend their plea, by adding thereto a notice similar to the notice of justification of the defendants, Hutchinson and White.

The jury returned a verdict in favor of the plaintiff, upon which judgment was rendered, to reverse which a writ of error was sued out of this court.

[Mr. Justice Smith, having been of counsel for the defendants below, did not sit in the case ]

*A. Finch, Jr.,* and *C. K. Watkins,* for the plaintiff in error.

Mr. Finch insisted that the deed of assignment is invalid, as being in violation of section 13, of the " Act concerning Insolvent Debtors." *O. R. S.* 1839, 173; *Richmond Manf. Co. vs. Pratt,* 3 *Conn. Rep.* 487;

*Perry et al. vs Holden,* 22 *Pick.* 269, 23 *id.* 450 ;
1 *Met.* 79.

The statute referred to, warrants this position. It is two-fold :

1st. It provides a mode by which an insolvent debtor may be discharged from his debts.

2d. It provides a remedy for attaching or execution creditors against a partial or unequal assignment.

This is manifest from the whole act. Provision is made for the discharge of the insolvent, for the distribution of his estate, &c.; preference of creditors is forbidden ; and section 13, of the act, provides, that no assignment shall be valid against attaching or execution creditors, unless all the creditors are made equal by its provisions. This section does not render such assignment wholly void, but only as to attaching or execution creditors. The assignor was insolvent in this instance, and comes within the principle held in 10 *Pick.* 407–413.

2. The provision that the assignee, " while acting in good faith, shall not be made or held personally liable in the premises in any manner," is restrictive of the legal responsibilities of a trustee, and vitiates the assignment.

3. The provision in the assignment, for the sale of the trust estate, " upon such terms and for such prices as to the trustee, should seem advisable," is a power to sell upon credit, intended to hinder and delay creditors, and renders the assignment void. *O. R. S.* 164, *Sec.* 1 ; 8 *Howard* 66 ; 6 *Wend.* 219; 9 *Paige*, 406; *Law Mag. No.* 18, *Jany.* 1850, 2 *Comst.* 363.

4. The clause, restrictive of the personal liability of the assignee, is an unusual one. When this as-

signee accepts the trust, he does so with an express reservation of some of the liabilities and obligations which the law imposes upon trustees. The law holds them to a rigid rule in the management of the trust estate ; and the plea of good faith will not avail against the requirements of the law. This reservation equally with the power to sell the goods on credit, manifestly tends to hinder, delay and to defeat creditors, and must render the assignment void·

Again, the court below, in confining the defendants to proof of " concerted action," of the assignor and assignee, and in the instruction to the jury, that proof of such " concerted" action, at the instant of executing the assignment, was the only proper evidence of fraud, and that the rule of evidence, in criminal cases, had not its application here, but the burthen is with the defendants of making out the facts by clear and satisfactory legal proofs, such as should satisfy reasonable men," is an impracticable theory, contrary to every principle of law and rule of evidence. 12 *Wend.* 41; 12 *id.* 299 ; 11 *id.* 83 ; *Cow. & Hills' Notes, part* 2, 604; 4 *Conn. Rep.* 142, and especially in cases of fraud. *Stark. on Ev., title Presumptive Ev., Cow. & Hill Notes, part* 2, 681, *note* 309.

5. The court erred in submitting it to the " jury to determine whether the defendants did not so dispose of the goods as to render them trespassers *ab initio,* even if the assignment is fraudulent," and that the record of the judgment was no evidence of indebtedness, is likewise erroneous.

·*James S. Brown,* for the defendant in error.

In an action of trespass, it is sufficient for the plaintiff to show a possession of the goods, a taking by the de-

fendant, and the value of the goods taken. These

facts being conceded, the defendant cannot protect himself by impeaching the title of the plaintiff, but must show in addition, some legal right on his own part, to take possession of the goods. If the legal right to distrub the possession of another does not exist, then such disturbance becomes a trespass.

In the case below, there was no dispute about the *possession* of Lord, or as to the taking of the goods or their value. And it devolved on defendants to show a legal right or authority to seize the goods. If that is wanting, then their exceptions to the ruling of the court below are immaterial. To show such authority they offered in evidence a writ of attachment issuing out of the District Court of the United States, under the act of the Legislature of the Territory of Wisconsin. *Sess. L.* 1842, *p.* 21. By that act the clerk is authorized to issue a writ of attachment on affidavit filed and the order of the Judge upon the affidavit.

Some affidavit, and an order were necessary to authorize the issuing of the writ, otherwise it was simply a void act of the clerk, protecting the marshal, but no one else. 2 *Pick,* 411; 1 *Doug.* 41; 2 *J. R.,* 46; 4 *J. R.,* 598; 4 *Mass.* 357; 2 *Cow. & Hill's notes,* 793, 798.

The act of the judge in allowing the writ and making the order is a judicial act, and whether right or wrong, neither the clerk or the officer had a right to decide, but they were bound to see that such order existed. It is true, that the officer (but no one else) seizing goods in possession of, and belonging to the *defendant,* by virtue of a process regular on its face, is protected, although it improperly issues, but the authorities above cited show that even he is not pro-

tected without the strict proof of right, where he takes property claimed by another than the defendant named in the process.

But the case was discontinued as to the marshal and his deputies, leaving only Finch & Lynde defendants, in regard to whom there can be no doubt of the necessity of showing an affidavit and order of the Judge. Having failed to show either, the process was void as to them. It became, therefore, immaterial as to them, whether the assignment was valid or not, they having no valid process to enable them to dispute the title of the plaintiff below.

2. As to the bond of indemnity, it is contended that no interference or authority could be more direct. In the law every interference with authority for, or encouragement of a trespass, makes the guilty party a co-trespasser. 10 *Wend.* 40; 5 *Ohio*, 250; 10 *Mass.* 125. The court. therefore, properly admitted the bond in evidence.

It was immaterial to the case whether, by the strict letter of the bond there was an indemnity for levying upon the goods in possession of Lord ; it is enough, that from the terms of the bond and the accompanying circumstances, it should appear, that the defendants authorized the taking of the goods complained of.

The court properly allowed the plaintiff to show the manner of entry into the store. ·

1st. Because it was part of the *res gestæ*.

2d. Because the marshal had no right to break the outer door ; and the abuse of process would constitute them trespassers throughout. They have no right to raise a latch, break a window, or raise a window, and the same acts which would in case of entry with felonious

intent, constitute the crime of trespass [burglary?] will constitute with the officer, an abuse of process, which makes him a trespasser. 1 *Hill*, 336 ; 16 *Verm.* 393 ; 12 *Pick.* 270.

The record of the judgment offered to prove an indebtedness from Wall to Carter, Holbrook & Co., was properly excluded. The judgment was obtained on the testimony of Finch, one of the defendants, as a witness, subsequently to the date of the trespass. If this could be admitted as evidence of an indebtedness, it would be enabling a party to manufacture evidence for himself. But this cannot be done. 1 *Philips' Ev.* 327 ; 1 *Cow. & Hill's Notes*, 819 ; 18 *J. R.*, 352 ; 4 *Day*, 431.

The first instruction asked for by the defendants below, asks the court to assume that the assignment was void as a matter of law, and that without any affidavit or order of the court, the goods in question could be seized on the writ. But the statute expressly declares it to be a question of fact for the jury. *R. S., p.* 309, § 4, and this provision is substantially copied from the Territorial Statutes of 1839, p. 164. It likewise included the right of the marshal to make the debtor agent to sell.

The 2d and 4th instructions asked, are liable to the same objections ; the 4th is based upon the erroneous idea that an authority to sell on credit is actually given. 8 *How. R.* 466.

The 5th instruction involves a decision on the part of the court as to all the testimony given.

The plaintiff in making out his part of the case had shown possession in himself, claiming title, and a disturbance of that possession ; the defendants, instead of rebutting that proof, sought to avoid it by assent-

ing to these facts, and showing that the plaintiff claimed title under the assignment and that the assignment was void, they themselves introducing it. There was therefore no fact in the case upon which instruction 14, as well as the others of similar character, could be based.

An assignment fraudulent against creditors is valid against parties. *O. R. S.,* 163, 164. And in order to set aside the assignment it is necessary to show that the party attaching was, at the time of the assignment and levy, a creditor. 2 *John. Rep.* 46 ; 2 *Pick.* 411, which was not done in this case, and therefore the question of fraud was immaterial.

Again, the subsequent sale of the goods by Wall, the judgment debtor, was illegal, as no one could act as sheriff or marshal in his own case, and Lord was the party interested in the surplus. It was illegal because no execution or order of sale was shown, and no previous advertisement. This being the case, all parties concerned became by the abuse of legal authority, trespassers *ab initio* ; the distinction in the cases being, that where a party abuses an authority derived from the plaintiff, he is liable for such abuse, but if he abuses authority derived from the law, he becomes a trespasser *ab initio.* 2 *Shep.* 44; 21 *Pick.* 55 ; 2 *Hill,* 47 ; 16 *Virginia,* 393.

*Lastly.* The transaction between Lord and Wall was in the nature of a purchase. Lord made himself responsible that the preferred creditors should release their debts (which was actually done,) in consideration of the assignment. These debts being greater than the value of the property assigned, and the assignment not purporting to be, and not being in fact, all the property of Wall.

*C. K. Watkins* in reply.

*By the Court*, CRAWFORD, J. It appears from the bill of exceptions in this case, that the goods, for the taking of which this action was instituted, were claimed by the plaintiff below by virtue of an assignment made to him by Caleb Wall, on the 28th day of June, 1849, for the benefit of certain creditors of Wall, named in the schedules attached to said assignment ; that, on the same day, but after the execution of the deed of assignment, these goods were attached, at the suit of Holbrook, Carter & Co., against the said Caleb Wall ; that the defendant Hutchinson was United States marshal for the District of Wisconsin at the time of the taking of the goods, to whom the writ of attachment from the United States District Court for said district was directed ; that the defendant White was his deputy, and that Finch and Lynde were the attorneys of the plaintiffs in said writ of attachment. If the assignment from Wall to Lord was valid in contemplation of law, then Lord acquired the property in the goods which could not be disturbed ; but if, by that assignment, he obtained no title to the goods, against the creditors of Wall, the assignor, then his possession was not legal or sufficient, as against such creditors ; so that we deem it unnecessary to treat of the position taken in argument by the counsel for the defendant in error, that, possession being shown in the plaintiff below, it was enough in this case.

As a general rule, in this form of action, the possession of the plaintiff is sufficient to enable him to maintain his suit in that respect ; but where a paramount right is shown to be in a third person, and the defendant connects himself properly with such

June Term, 1853.

Hutchinson et al.
vs.
Lord.

third person, the rule is otherwise. And here we may remark, that the question whether Holbrook & Co. were, at the time of the taking complained of, creditors of Wall, is sufficiently answered by reference to the deed of assignment, and schedule B., attached thereto. This instrument is executed, under seal, by Caleb Wall, of the one part, and by George P. Lord, the plaintiff below, of the other part. The statement of indebtedness by Wall "to the several persons mentioned in the schedules," and "in the several sums of money set opposite their respective names" in the said schedules, and the fact that Holbrook, Carter & Co. are included and named in schedule B., must, we think, operate as an estoppel. Lord cannot controvert the fact of such indebtedness.

We are now brought to a consideration of the objection urged to the deed of assignment. By it, the assignee is empowered "to sell and dispose of the assigned goods, &c., in such manner, either at public or private sale, *and upon such terms*, and for such prices as to him shall seem advisable." It authorizes him to collect the assigned debts, and "to *compound, compromise and settle* any of said debts, in such manner and upon such terms as to him shall seem expedient, and, upon such settlement, to release and discharge the same." And it further declares, "*that the said party of the second part, while acting in good faith, shall not be made or held personally liable in the premises in any manner.*"

The plaintiffs in error insist that the provision in ths assignment, which we have last cited, vitiates it, inasmuch as it restricts the liability of the assignee.

Willis, in his treatise on the duties and responsibilties of trustees, says: "A trustee is bound to manage

and employ the trust property for the benefit of the cestui que trust, with the care and diligence of a provident owner, and, so far is this rule extended, that however fully a discretionary power of management may have been given, yet, *if the trustee omit doing what would be plainly beneficial*, he will be answerable." And in another place he says : " if, in the management of the trust property, they (the trustees) be guilty of fraud or negligence, *want of caution*, misrepresentation, *mistake* or concealment, or wilful misconduct, or misapplication, or omit doing what is plainly beneficial for the estate, notwithstanding the utmost latitude be given them for conducting the trust, they will be guilty of a breach of trust." ( *Willis on Trustees*, 125, 172-3 ; *Lewin on Trusts*, 299.

In *Story's Equity Jurisprudence*, chap. 32, § 1272 and 1273, it is said :

" Courts of equity have laid down some artificial rules for the exercise of the discretion of trustees, which import ('to say the least) *extraordinary* diligence and vigilance in the management of the trust property. Thus, for example, if a trustee should lay out trust funds in any stock, in which a court of equity itself was not in the habit of directing funds in its own possession to be laid out, *although there should be no* MALA FIDES, yet, if the stock should fall in value, he would be held responsible for the loss." See also *Hovendon on Frauds*, 486.

The application of these authorities to the case before us is obvious. In the absence of the clause in this assignment which is objected to, the law, whether administered in its own courts or in courts of equity, would impose upon a trustee or assignee the obligations and responsibilities spoken of in the works

June Term, 1853.

Hutchinson et al., vs. Lord.

which we have quoted. But the parties to this deed of assignment have chosen not to leave the liability of the assignee where the law places it, but to provide expressly that he " shall not be held or made personally liable in the premises while acting in good faith."

The trustee or assignee may in the utmost *good faith* omit to do some act which would be *plainly beneficial* to the trust property or to the *cestui que trust*, and for this omission the law would hold him personally liable. He might, with no *mala fides* whatever, neglect to do that which a provident owner would deem proper to be done in relation to the property. Nay, it is laid down by very high authority, that " gross negligence is, or, at least, may be, entirely consistent with *good faith* and honesty of intention." *Vide Story on Bailments*, 15. He might, in good faith, be incautious, or commit mistakes detrimental and highly injurious to the *cestui que trust*, and in all these cases, the law would hold him *personally liable ;* but, by the instrument before us, this liability is taken away, provided he has acted in *good faith*.

A trustee or assignee for the benefit of creditors, is not intended to be a mere passive depository of the estate, (or title,) but he is " bound to exert himself actively" in the execution of the object for which the assignment is made, and certainly the obseavance of *good faith* alone, would not come up to a full discharge of the duties imposed.

Without adverting to the numerous cases in which the trustee has been held to the liability we have above stated, we will refer to the recent case of *Litchfield and others vs. White and Leonard,* cited at the bar (3 *Sandford's R.,* 545.) In that case the assignment was held to be fraudulent and void, because

June Term, 1853.

Hutchinson et al., vs. Lord.

it contained a provision that the assignee should not be liable or accountable for any loss that might be sustained by the trust property, or the proceeds thereof, unless the same should happen, *by reason of his own gross negligence or wilful misfeasance*. Apart from this provision, the assignee would be liable, as we have seen, for gross negligence or wilful misfeasance, and the effect of the provision would have been to relieve him from all other personal liability, and so in the case at bar, the effect of the provision would be, to relieve Lord from all personal accountability whatever, so long as his acts were *in good faith*.

We are unable to see any difference in principle between the cases. In the very able opinion of the court, given by Mr. Justice Sandford, in the case just cited, he says : "The effect of the assignment, therefore, is to withdraw the debtors property from the reach of creditors pursuing their lawful remedies, and to place it in the hands of any assignee, where it may be wasted and lost, unless he chose to exercise a much greater degree of diligence than he has undertaken to bestow upon it. The property is vested in a trustee, who by the debtor's act, without the assent of the creditor's, it exonerated from the principal legal liabilities of trustees. This is the practical operation of the assignment, as expressed upon its face, and to our minds it discloses an intent to hinder and delay creditors. *Every provision in an assignment, which exempts the assignee from any liability that he would by law be subjected to as assignee, is of itself a badge of fraud.* The insertion of clauses which in their operation may lead to the waste and loss of the property, declares an intention on the part of the insolvent

debtor, to devote his property to some purpose other than that of the payment of his debts.

The assignor is, in law, deemed to have intended all the consequences which may legitimately flow from the provisions of the assignment. We must, therefore, hold that the debtor in this case intended to place his assets in a situation where his creditors could not reach them, and where, through his own sub-agency or otherwise, they would be lost to such creditors. The intent to hinder, delay and defraud the latter, thus becomes a necessary legal inference from the provision under consideration."

The views here taken, are deemed by us entirely appropriate to the case before us.

Indeed, the assignment in the case cited, required at the hands of the assignee a much more ample discharge of his duties, than does the assignment in this case.

It is also insisted, that the authority given to the assignee to dispose of the assigned property " upon such terms and for such prices" as he should deem advisable, is equivalent to an authority to sell upon credit, and therefore the instrument is void.

That an assignment for the benefit of creditors, which empowers the assignee to sell the assigned property *on credit*, is fraudulent and void, (unless, indeed, the creditors have assented thereto,) is the settled doctrine in New York at the present time.

In *Barney vs. Griffin*, 2 *Coms. R.*, 365, Mr. Justice Bronson, in delivering the opinion of the court, says : " It is an unanswerable objection to the deed, that the assignees are authorized to sell the property on *credit.*" And the reasons which he assigns for his conclusion are cogent. It is true that this part of the opinion

given by the learned judge was not necessary to the decision, for the assignment in that case was held void for another reason; but the objection there so forcibly urged has, since that time, been directly passed upon by the Court of Appeals of that State. In the case of *Nicholson and others*, appellants, *vs. Leavitt and others*, respondents, (October term, 1852,) Mr. Justice Gardiner, in giving the opinion of the court, discusses this point upon authorities, and fully sustains the opinion of Judge Bronson. In the latter case, the Court of Appeals held certain assignments, containing a power to sell *upon credit*, to be fraudulent and void, as to creditors.

Upon principle, as well as upon the authorities we have referred to, we are led to conclude that a power to sell upon credit, given to an assignee by a debtor in failing circumstances, would of itself be a badge of fraud, because it would afford a means, and have a direct tendency, to "hinder and delay creditors."

Let us enquire whether the assignment in this case is obnoxious to this objection. The assignee is empowered to sell "upon such *terms* and for such prices" as he shall think proper.

In *Le Roy vs. Beard*, 8 *Howard's R.*, 451, Mr. Justice Woodbury, in defining the power granted by a letter of attorney, in which the agent or attorney was authorized to sell lands "on such *terms* in all respects" as he deems advantageous, lays some stress on the word *terms*.

He says: "*Terms* is an expression applicable to the conveyance and covenants to be given, as much as to the amount of, *and the time of paying*, the consideration."

Bouvier, in his "Law Dictionary," has it thus:

June Term
1853.

Hutchinson
et al,
vs.
Lord.

"Terms, *in contracts.* This word is used in the civil law to denote *the space of time granted to the debtor for discharging his obligation;* these are express terms resulting from the positive stipulations of the agreement, as *where one undertakes to pay a certain sum on a certain day,* and also terms which tacitly result from the nature of the things which are the object of the engagement, or from the place where the act is agreed to be done. For instance, if a builder engage to construct a house for me, I must allow a reasonable time for fulfilling his engagement."

On the other hand, the word *terms* is susceptible of a very varied signification, dependent on the subject-matter spoken of where, or in the sentence in which, it is used. Webster construes it to mean a limit or boundary, any limited time—in law, the limitation of an estate, or the time in which a court is held, and in *contracts,* " terms, in the plural, are conditions, propositions stated, or provisions made, which, when assented to or accepted by another, settle the contract and bind the parties."

This latter definition is a legal, as well as a popular and common one, which does not necessarily confine us to *time,* as the idea communicated by the words, but in giving it a legal construction as used in this instrument, we must bear in mind that, if the assignor had intended by this expression to mean *prices* only, it was wholly unnecessary to have used it at all, for he immediately and expressly gives that power by the words, "and for such prices."

He seems to use the word *terms* as distinguished from the word *prices.*

But it is unnecessary to draw very nice distinctions on this matter, for, if it be true (and we believe it to

be) as laid down in 10 *Wend.* 250, that "it is a general principle applicable to all instruments or agreements that whatever may be fairly implied from the terms, or language of an instrument, is in judgment of law, contained in it, " then there is no doubt, that from the peculiar manner in which the word is used in this assignment, it would do no violence to the intention of the assignor, to imply, that, when he expressly gave a control of the *prices* at which his goods were to be sold, he also by the word *terms* gave a control of the other conditions, which usually accompany a sale of goods. If a question were made between the assignee and those for whom he acted, as to his power to sell on credit, we have no doubt that *he* could fully justify the exercise of such power, under the language used in this assignment.

It was the duty of the court below, to have instructed the jury in relation to these conclusions of law, arising from the face of this assignment, because they constitute of themselves evidence upon the question of *intent* which the defendant below had a right to have submitted to the jury.

The tenth instruction asked by the defendants below, and which was refused in the form asked by the court, we think, was a proper one.

If the jury had found from the evidence, and believed "that the assignment in question was made to hinder and delay the creditors of Wall," certainly the plaintiff's below could not recover, having no right of any kind to the property taken, save that which he derived through the assignment.

The court erred in refusing to charge the jury as asked in this (tenth) instruction.

The defendants below also asked the court among

other things to charge the jury " that if the jury find from the evidence that the marshal, Hutchinson, or his deputy, White, defendants in this suit, took the goods in question by virtue of said writ of attachment, and if they also find from the evidence, that the goods were the property of Wall at the time of the levy, then, and in that case the plaintiff cannot recover in this suit."

This instruction was refused, so far as it related to the defendants, Finch and Lynde, but we are wholly unable to see the rule of law which would exclude it, as to any of the defendants.

It is a plain proposition of law that if the goods were proved to be the property of Wall, then they were liable to be taken in attachment at the suit of Wall's creditors, and the whole testimony in the case justified an instruction of this kind. Nor do we perceive that if the instruction could be given as applicable to the defendants, Hutchinson and White, it was not equally applicable to the case of Finch & Lynde.

These latter defendants are claimed to be liable only because they gave a bond of indemnity to the defendant Hutchinson, as marshal, and without enquiring how far they could be rendered liable in this respect, (upon which we give no opinion at present:) It is clear, to our minds, that whatever would justify or constitute a defence for Hutchinson and his deputy, would be equally a defence for Finch and Lynde. It was stated at the bar, that these latter defendants were not in an attitude, before the court below, to avail themselves of the same justification which might be urged by the other defendants, because they had filed a plea of the general issue only ; but by looking

into the record we find that on the trial of the case, by leave of the court, these defendants, Finch and Lynde, were permitted to amend their plea, by adding thereto a notice of justification, similar to the notice filed by the other defendants ; so that if any just distinction could be made on this account, the reason for such distinction does not exist.

It is unnecessary to examine the other errors assigned in this case.

The judgment of the Circuit Conrt is reversed.