## WEINBERG VS. THE STATE.

CRIMINAL LAW.    *Bigamy : Proof of prior marriage.*

1. To sustain an indictment for bigamy, it must be shown that the first marriage was valid by the law of the place where it was contracted.
2. Where, by the law of the place of marriage, it was required to be entered into as a civil contract before a magistrate, and the celebration of a religious ceremony of marriage without such prior civil marriage, was prohibited under severe penalties, proof of the religious ceremony, in a prosecution for bigamy, would not authorize a presumption that the civil ceremony had been performed.
3. Whether, in such a case, *admissions* by the accused after his arrest, that he " got married in Germany at H., about ten years ago," by a Jewish priest ; that his first wife was living, and he had never been divorced, would be sufficient (with proof of the second marriage), to warrant a conviction, is not here decided.
4. In a criminal cause, a writ of error having been issued irregularly (before any judgment had been rendered), and the exceptions having been certified up as a return to the writ, the court considers them, and for misdirection to the jury remands the cause, with directions to grant a new trial.

ERROR to the Circuit Court for *Dane* County.

The plaintiff in error sought by the action here to reverse a judgment against him for bigamy.    The question upon which the cause turned in this court will sufficiently appear from the opinion.    Reference is therein

made to certain *admissions* of the accused. The only evidence as to such admissions now found on the files of this court is the testimony of one Buckley, under-sheriff of said county, who stated, in substance, that, while the accused was under arrest, witness had a conversation with him, in which the accused said that he "got married in Germany about ten years ago, at a place called Hessen," which was "now taken by the Prussians;" that he "got married by a Jewish preacher;" that his first wife was living, and that he had never been divorced from her. A letter, claimed to have been written by the accused to the person alleged to be his wife by the first marriage, was also put in evidence, together with proof as to the signature, etc.; but this is not now on file here, and the precise nature of the contents does not appear.

The circuit judge refused instructions asked by the accused, to the effect that "evidence of a religious ceremony of marriage only" in the country where the first marriage was alleged to have been contracted, "is not evidence of a valid legal marriage in that country;" and that "all evidence in this case which only goes to prove a religious ceremony, and not a ceremony of marriage before a civil magistrate in the country where the first marriage is claimed to have taken place, is insufficient to prove marriage in this case." He then instructed the jury as follows: "The proof which the court has allowed as tending to prove the foreign marriage is: 1. The testimony of the witness tending to prove the religious ceremony of marriage in a church at Herling-hausen by a priest, and the identity of the defendant and the said Caroline* as the persons married according to the religious ceremonies of the Jews. 2. The testimony tending to prove the laws on the subject of marriage where the ceremony took place; that this religious

* The person who is charged to have been defendant's lawful wife at the time of his second marriage, which is alleged to have occurred in this state.—REP.

ceremony follows the civil contract of marriage, and that a priest who should perform it without a marriage in accordance with the civil law would be subject to heavy penalties. 3. The testimony of Buckley, tending to show admissions of marriage (you will remember what he testified to), as well as the testimony of the other witnesses. 4. The letter, after testimony tending to prove the signature. It is for you to say what credit you attach to this testimony, including the witness swearing to the signature. And if you believe the testimony, and find that the admissions of the defendant referred to the woman to whom it is alleged he was first married; and find that the letter was addressed to her; and find that she and the defendant were the persons married, according to the religious Jewish ceremony, in the church at Herlinghausen — after having first found that such ceremony took place; and find that, according to the code Napoleon or the law of the land, a priest was prohibited from performing the religious ceremony until the civil marriage had taken place, you will be authorized to infer, in the absence of any proof to the contrary, that the preliminary civil contract of marriage was made according to the law of the kingdom of Prussia."

*William F. & H. Vilas*, for plaintiff in error, to the point that unless there was, at the time of the alleged second marriage, a valid legal marriage by the law of the place of contract, no conviction can follow in such a case as this, and that, in case of a foreign marriage, the law of the place is a fact to be proved, cited 3 Phil. on Ev. (Edwards' ed. of 1859), 524; *Ganer v. Lady Lanesborough*, Peake's N. P. 17. 2. The presumption *of the law*, that the accused is innocent, is stronger than the presumption that the supposed rabbi in Prussia did not violate the law there. It is conclusively presumed that a defendant is innocent, unless every circumstance essential to his guilt is made out by legal proof. Hence, even the rule that the burden of

proof is on the party holding the affirmative, yields to the presumption of innocence. *Williams v. East India Co.*, 3 East, 192 ; approved in note 417, Cow. and H. Notes to Phil. on Ev. ; *King v. Hawkins*, 1 East, 216. The doctrine of the circuit court would require the accused to prove a negative. Hence, too, the presumption of continued life, ordinarily a strong one, is made to give way as against the presumption of innocence ; and in cases like this, the life of the previous consort must be proved at the date of the second marriage. *Rex v. Inhabitants of Twyning*, 2 Barn. & Ald. 386. The cases universally hold, that, in actions for bigamy, incest and crim. con., a *marriage in fact* must be proved ; hence, a *presumed* marriage is insufficient. Here the court instructed the jury to presume that a marriage had taken place, which was *not proved*. The presumption which the court thought so strong is only the general one, *omnia præsumuntur rite acta*. But general presumptions give way to special presumptions, like that of the innocence of the accused in a criminal case. Best on Presumptions, §§ 45, 58. To no mind is the presumption of a lawful marriage from the mere fact of a religious ceremony, which, confessedly, was not itself a valid marriage, stronger than that which arises from long continued cohabitation, the rearing of children, and constantly passing for man and wife for a long period of years. Yet the latter would be insufficient. *West v. The State*, 1 Wis. 209 ; *Morris v. Miller*, 4 Burr. 2057.; and other cases cited below. Again, proof of the two marriages is part of the proof of the *corpus delicti ;* and to prove that, presumptions are rarely admissible, but it must be unequivocally established. Best on Presumptions, § 201. Every *intendment* on the subject is in favor of the accused. *Catherwood v. Caslon*, 13 M. & W. 261 ; *Rex v. Butler*, 1 Russ. & Ry. 61 ; *West v. The State*, 1 Wis. 209. Again, the proof of marriage by such a presumption

is against the rule which requires the *best evidence* of the fact. It appears, by the only evidence relating to the subject in this case, that the civil marriage is *recorded*, and must take place in the presence of eye witnesses. The record, or an exemplification of it, or the testimony of the eye witnesses, was the best evidence. *Williams v. East India Co.*, above cited; *Hitts v. Colvin*, 14 Johns. 182; 1 Phil. on Ev. § 2, title "Presumptive Evidence;" C. & H.'s Notes, Nos. 322, 325; and title "Best Evidence," C. & H.'s Note, 417; *Comm. v. Kinison*, 4 Mass. 646. 2. As to the rule in relation to the evidence of confessions in such cases, counsel cited *West v. The State*, 1 Wis. 209; *Morris v. Miller*, 4 Burr. 2057; *Comm. v. Littlejohn*, 15 Mass. 163; *People v. Humphrey*, 7 Johns. 314; *State v. Roswell*, 6 Conn. 446; *People v. Lambert*, 5 Mich. 349; *Kibby v. Rucker*, 1 A. K. Marsh. 391; *Fenton v. Reed*, 4 Johns. 51; *Gahagan v. The People*, 1 Parker, 378; *Leader v. Barry*, 1 Esp. N. P. 353.

*John C. Spooner*, Assistant Attorney General, for the state, as to the admissibility of the confessions of the accused, in evidence, cited *West v. The State*, 1 Wis. 209; 1 Bishop on M. and D. 498, *et seq.;* 1 id. 533; 2 Virginia Cases, 92; *Cayford's Case*, 7 Greenl. 57; *Truman's Case*, 1 East's P. C. 470. 2. To the point that the jury, after finding other facts as stated in the instruction given them, might infer that the civil contract of marriage had been entered into, he cited 1 Bishop on M. and D.; Best on Legal Presumptions; *Williams v. East India Co.*, 3 East, 192; 10 id. 289, 290. This is not the case of one general presumption against another. It is a presumption in aid of certain proven facts — a presumption forming, as it were, a link in a chain of evidence, and not standing independent and alone; and its character in this respect should not be disregarded. The general rule, as laid down by Best, is, that "there must be clear and unequivocal proof of the *corpus delicti;*" but by this must not be understood

absolute proof of facts, which, unaided by any inference from such facts, leaves the *corpus delicti* proven *beyond the possibility of a doubt.* Best, 164, § 204; *Rex v. Burdett*, 4 B. & A. 161; Roscoe's Cr. Ev. 18; 17 How. St. Trials, 1430. In cases like the present, as in actions for adultery, perjury, etc., proof of the *corpus delicti* is identical with proof that the accused is guilty; and it cannot be said that the guilt of the alleged criminal must be proven beyond the possibility of a doubt. Any proof which satisfies the jury beyond a *reasonable doubt* that the defendant is guilty, likewise satisfies them, beyond a reasonable doubt, of the *corpus delicti.* Both may be *inferred* from circumstances "which satisfy the legal conviction of the court that the criminal act has been committed." Best, § 162; *Loveden v. Loveden*, 2 Hagg. Cons. 1.

PAINE, J. The plaintiff in error, having been indicted for bigamy, was, under the rulings of the circuit court, convicted. Without attempting to pass upon the many questions discussed, we think the judgment must be reversed for error in one of the instructions to the jury.

The first marriage was alleged to have taken place in the kingdom of Prussia. And all the proof as to the law there in force tended to show, that, to constitute a valid legal marriage, it must be entered into as a civil contract before the civil magistrate. The proof also tended to show that after the performance of this civil ceremony, which constituted the legal marriage, it was quite common for parties to have such a religious marriage ceremony, in addition, as they might choose; but the celebration of such religious marriage by any person, without the civil marriage having been first performed, was prohibited under severe penalties.

It was not denied that it was necessary for the prosecution, in order to sustain a conviction, to prove that the first was a valid legal marriage according to the law of the place where celebrated. The authorities cited by

the counsel for the plaintiff in error establish that proposition. But there was no proof in this case tending directly to show the performance of the civil marriage ceremony. The only ceremony of which there was direct proof was a religious one, performed according to the custom of the Jews. And on this the court instructed the jury, in effect, that if they were satisfied of the identity of the parties — about which there was some question — and of the performance of the religious ceremony, and that by the law the Jewish priest was liable to severe penalties for performing that, unless the civil marriage had previously taken place, they would be authorized to infer that it had previously taken place according to law.

This seems to us to have been error. The one fact has no inherent natural tendency to prove the other. There is no necessary logical connection between them. Either one might well have occurred without the other. The only ground for inferring the civil from the religious marriage is the presumption that the Jewish priest would not have performed the latter unless the former had taken place. But this is hardly compatible with the strictness required in proving the essential facts in a criminal prosecution. Where the law requires proof of an actual legal marriage, it cannot be permissible to prove it by merely showing some other act performed by another person, and which he was forbidden under penalties to perform unless the actual marriage had previously taken place. The utmost effect of such evidence would be to create the presumption that the priest would not have violated the law of the country where he acted. Of course, if he had been prosecuted there for such violation, that presumption would have existed in his favor. Perhaps, under the justly liberal rule in respect to proof of foreign marriages, in civil suits, it would also be allowed to prevail. But to give it that effect in a criminal prosecution would be to overcome the presumption of the prisoner's innocence by the no

stronger presumption of the innocence of a stranger, and that in a proceeding in which such stranger was not on trial. This is not consistent with the strictness required in criminal prosecutions. In these there must be proof, either direct or circumstantial, having some intrinsic tendency to establish the facts showing guilt.

To illustrate : suppose it became necessary in a criminal case to prove a valid marriage under our statute. It authorizes certain civil and religious officers to perform the ceremony. It forbids all others from doing so under severe penalties. Would it be sufficient, in such case, for the prosecutor to show that the ceremony was performed by some person, without any proof whatever that he was an authorized person, and then tell the jury, that, inasmuch as he was liable to penalties if he performed the ceremony without, they might find, from the fact that he had performed it, that he was authorized? This would hardly be claimed. And yet it would be entirely similar in principle to the rule adopted in this case. If the court had fairly submitted to the jury, upon the whole evidence, including the admissions of the defendant, the question whether the civil marriage had been performed, it may perhaps be doubtful whether the verdict could have been disturbed; though there would still have been the question whether his admissions would have been sufficient, within the rule established in *West v. The State* (1 Wis. 209), to justify a conviction. The fact that a religious ceremony had actually been performed, might, even though the admissions should clearly imply a marriage ceremony as indicated by that case, still leave room to suppose that the ceremony referred to was the religious one, which would have no validity in law. This possibility seems to show that there is some force in the arguments of those courts which hold that admissions ought not to be held sufficient to warrant a conviction in such cases, because they involve matter of law as well as of

fact. *People v. Lambert*, 5 Mich. 366 ; *State v. Roswell*, 6 Conn. 451. But we shall not attempt to decide, at this time, upon the nature or effect of these admissions.

Upon a point of practice, this case is in the same condition as that of *Bennett v. The State*, 24 Wis. 57. There having been no final judgment, a writ of error would not lie ; but as one was issued irregularly, and the exceptions were certified as a return to it, we have considered them, and will remand the case, with directions to the circuit court to grant a new trial for the misdirection of the jury.

*By the Court.*— So ordered.