By the Court.—Curtis, J.
The plaintiffs sue to recover $2,854 upon an account for the services of the plaintiffs, as the attorneys of the defendant, in the preparation of various instruments, in counselling and advising in respect to her property, and for disbursements, the same being alleged to be in and about the defendant’s business. The answer admits that the plaintiffs paid out sums of money for defendant, and drew certain papers, and performed certain services for defendant, set forth in the plaintiffs’ account, a reasonable compensation for which would be the amount charged for the same in the plaintiffs’ account, $64.50, in all amounting to $104, but denies that the plaintiffs, or either of them, were employed as counsel for her, or in advising her.
The item in controversy in the plaintiffs’ account is as follows:
“December 30, 1871. To counsel fee in matter of consultation with your attorney, Mr. John Garvey, $2,750.”
*328 The plaintiffs read in evidence a power of attorney of Andrew J. and Isabella Garvey to John Garvey, dated September 21, 1871, which in terms constituted the latter an attorney “to sell, assign, transfer, pledge, mortgage, lease and convey, and to make contracts for the sale of all or any estate, etc., and to execute and deliver all deeds, etc., and to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, etc.”
The plaintiff,. John H. Harnett, testified to counselling and advising John Garvey in various matters relating to defendant’s property, to having thirty-five to forty consultations with him, to advising in reference to the effect of proceedings by the creditors of defendant’s husband, Andrew J. Garvey, if they were to push their claims, and also as to whether the city or State of New York could affect the title of Mrs. Garvey. That these consultations involved property estimated to be worth half a million of dollars, and consumed a great deal of time, in the absence of Mr. Garvey, in examining matters.
The power of attorney from the defendant to John Garvey is specific, and does not by its terms authorize him to retain, consult, and employ counsel, except so far as may be necessary to prepare such instruments of conveyance, mortgage, lease, and contract as it authorizes him to execute. Consequently, if he employed counsel, and advised with them in respect to other matters affecting the defendant’s interests, he did so without authority, and the defendant is not bound by such acts, unless she subsequently ratified them.
Testimony was introduced on the part of the plaintiffs to show a ratification. It was contradicted by the defendant. The court charged the jury that the plaintiff’s testimony did not establish a ratification by the defendant of the acts of her attorney, and that upon the evidence the plaintiffs could not recover anything more *329 than the $104 and interest thereon, conceded to be due by the answer.
The jury found accordingly.
The plaintiff excepted to that portion of the charge which stated that the plaintiffs did not show any evidence of ratification by the defendant of the acts of her attorney.
This is the principal exception taken by the plaintiffs, and if well taken disposes of the case.
The plaintiff John H. Harnett testifies: “The defendant had been in Europe; I saw her at her resi- “ dence in East Forty-seventh Street, this city. I went “to her residence twice; the first time was in the month “of February, 1872; I saw her only at her residence. “The first time I called at her house to see Mrs. Garvey, “I saw Mrs. Garvey, and I said that I called in reference “to my bill that had been rendered. She knew me. “ She said, ‘ Well, Mr. Harnett, I would feel very much “ obliged to you if you would allow this bill of yours to “ stand over for a little while, until my husband comes “home from Europe.’ I said, ‘Certainly.’ She said, ‘ I “ hope, when I am settling this bill with you, you will “be a little liberal, and make a reduction in it, because “I think it is rather high.’ I said to her I should sat“isfy her in relation to that matter; that if she considered my bill high I was disposed to be liberal and “make it satisfactory. That was about the substance “ of the conversation. I am pretty sure that I called to “see her at the suggestion of John Garvey, to whom I “ had rendered a bill. She said yes, she had the bill before her; that she wished to have the matter remain “ open until her husband came back from Europe ; she “ stated that she had no doubt my professional advice “to her brother-in-law, John Garvey, was very discreet “ and very good, and she was very well satisfied with “ how everything had gone on in her absence, but she “ was very short of money at the time, and hoped to be *330 ‘in. a very short time able to settle up my account, “and would do so when her husband came back. The “ next conversation I had was about three or four weeks “ after the first; she stated to me that Mr. Garvey had “not got home yet—I am pretty sure that was in the “month of March—and that she was still short of funds, “ and asked my indulgence in relation to the bill. I am “not positive whether it was at that interview, or at the ‘ ‘ first one, that we spoke about the services rendered. I “told her I had advised her attorney, John Garvey, in “relation to her real estate and in relation to her af- “ fairs. I think that was the substance of it. She did “not demand any detailed statement, and it was only “in a general way.”
‘ ‘ Q. She told you at the second interview that her husband had not yet returned, and asked your indulgence. Was anything more said about the payment of the bill %
“ A. Oh, yes; she said the bill would be paid as soon as her husband got bach and she was in funds?''
This testimony, uncontradicted, appears to amount to a ratification by the defendant. She had the bill before her; she was told that the plaintiffs had advised her attorney, John Garvey, in relation to her real estate and her affairs ; she expressed approval and satisfaction in respect to the advice and the way things had gone in her absence, and promised to pay the bill as soon as her husband got back and she was in funds. No objection was made either as to the authority of her attorney to employ and advise with the plaintiffs, or as to any want of knowledge of the nature of the services rendered. The bill and the statement of the plaintiff apprised her of the facts, and her ratification was made without anything being misrepresented or Avithheld from her, but with full knowledge of the matter, so far as appears by the plaintiff’s evidence.
When an attorney goes beyond his power, the principal, upon being informed of the facts, must dissent *331 within, a reasonable time. When the principal promises to pay the obligations so incurred, or takes the benefit of a part ofithe transaction, he in effect ratifies the action of the attorney (Benedict v. Smith, 10 Paige, 130). Where the principal has within his power ample means of ascertaining the facts, not only from his agent, but from the adverse party, the presumption of law is that he paid ordinary attention to his own affairs, and that he ratified his agent’s acts with a full knowledge of all the facts (Rogers v. Kneeland, 10 Wend. 249).
The defendant contradicts the plaintiff’s statement as follows:
“ Q. Did you promise to pay him the bill ?
“A. No, sir; I did not, and he knows I did not.
“ Q. Did you ask him if he would take $2,000 ?
“A. No, sir; I did not. I said to him, ‘This bill ‘ ‘ takes my breath away. If you had sent a bill for $200, “ I might look into it; but you sent a bill for $5,000, and “I don’t think you have done any work for it; and “there it remains, and there it will remain.’ ”
I am inclined to think this raises a question of fact that should have been submitted to the jury. The testimony on the plaintiffs’ part discloses such evidence of ratification by the defendant of the act of her attorney, that the plaintiffs were entitled to have it, together with the conflicting evidence considered by the jury. There was some evidence as to the value of the services rendered, and there were also other exceptions by the plaintiffs to the rulings of the court; but if the view taken above is correct, it disposes of the case.
The judgment appealed from is reversed, and a new trial ordered, with costs to abide the event.
Monell and Sedgwick, JJ., concurred. (